IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                  |   |                              |
|------------------|---|------------------------------|
| MAXTENA, INC.    | : |                              |
|                  | : |                              |
| v.               | : | Civil Action No. DKC 11-0945 |
|                  | : |                              |
| JEREMY MARKS     | : |                              |
|                  | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for review in this contract dispute are numerous discovery motions filed by Plaintiff Maxtena, Inc. ("Maxtena"), Defendant Jeremy Marks ("Marks"), and several nonparty subpoena recipients.  The following motions will be addressed in this Memorandum Opinion:  (1) Marks's motion to compel certain discovery responses from Maxtena (ECF No. 57); (2) Marks's motion for sanctions (ECF No. 54, as corrected by ECF No. 69); (3) Maxtena's motion to strike Marks's motions to compel and for sanctions (ECF No. 63, as corrected by ECF No. 82); (4) Maxtena's motion for a protective order or to quash the subpoena issued to nonparty James Loving (ECF No. 72); (5) Marks's motion to compel Loving to produce certain documents from his Maxtena email account (ECF No. 81); (6) a motion to quash filed by nonparties Thuraya Communications, Inc., and Robert Demers (ECF No. 46); (7) a motion to quash filed by nonparty the State of Maryland Department of Business and

Economic Development ("the State") on behalf of the Maryland Venture Fund Authority and Thomas Dann (ECF No. 73); (8) a motion to quash filed by the State on behalf of Peter Greenleaf (ECF No. 78); (9) Maxtena's motion to quash the subpoenas issued to nonparties Michael Lincoln, Esq., and Phillip Premysler (ECF No. 91); (10) a motion to quash filed by nonparty Michael Lincoln, Esq. (ECF No. 92); (11) Marks's motion for determination of claim pursuant to Fed.R.Civ.P.45(d)(2)(B) (ECF No. 93); (12) Maxtena's motion for a protective order to treat all third-party productions as confidential (ECF No. 70); (13) Maxtena's motion for an order to disclose confidential discovery material to interested third parties (ECF No. 88); and (14) various motions to seal (ECF Nos. 58, 64, 68, 101, 109, 118, 124, & 132).[1]   The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

---

[1] The following motions seek procedural relief:  (1) the consent motion for extension of time to file a response to the motion to quash filed by non-party Michael Lincoln (ECF No. 126), and (2) Maxtena's motion for leave to file a belated reply in support of its motion to quash the subpoenas issued to non-parties Michael Lincoln and Phillip Premysler (ECF No. 128). Because the parties complied with the briefing schedules proposed in these unopposed motions, both motions will be denied as moot.  Marks's motion for extension of time to file a response to the motions to quash submitted by the State (ECF No. 125) will be addressed in Section V.F.

## I.   Background

On April 13, 2011, Maxtena filed its complaint in this action (ECF No. 1), which it amended shortly thereafter (ECF No. 5). The amended complaint alleges that Marks was a co-founder of Maxtena, a company that designs specialized antenna systems. At the time of the company's formation, Marks owned one-third of Maxtena's stock. Marks also served as an officer and employee of Maxtena, including in the capacity of Chief Technology Officer. Pursuant to an agreement that was signed by all of Maxtena's shareholders in 2007, including Marks, any shareholder whose employment was terminated for cause was purportedly required to sell his or her shares back to Maxtena for $100.00. In July 2010, Maxtena terminated Marks for cause because he allegedly disclosed certain confidential, proprietary information about Maxtena's technology to a third party. At that time, Maxtena sent Marks a check for $100.00 to repurchase his ownership stake in accordance with the shareholder agreement. When Marks refused to accept the check and disputed Maxtena's right to his shares, Maxtena filed the instant lawsuit seeking a declaration that it is the rightful owner of Marks's shares. Maxtena also seeks damages from Marks, asserting counts for breach of fiduciary duty; violations of the Virginia and Maryland trade secrets statutes; violations of the Virginia Business Conspiracy Statute; and breach of contract.

Early in the case, the parties consented to the entry of a proposed "Stipulated Order Regarding Confidentiality of Discovery Material and Inadvertent Disclosure of Privileged Material" (hereinafter, "the Confidentiality Order"). (ECF Nos. 17 & 18). Among other provisions, the Confidentiality Order sets forth a procedure for designating materials produced in discovery as "confidential." (ECF No. 17-1 ¶ 1). Such designations are not to be made "routinely," but instead only after "reasonable inquiry" and "only when [the designating party] in good faith believes [the document] contains sensitive personal information, trade secrets or other confidential research, development, or commercial information which is in fact confidential." (*Id.*). When either party seeks to file documents designated as "confidential" with the court, the Confidentiality Order requires the simultaneous filing of an interim sealing motion pursuant to Local Rule 104.13(c). (*Id.* ¶ 2). Paragraph 6 establishes that, pursuant to Fed.R.Evid. 502(d), "the inadvertent disclosure of any document that is subject to a legitimate claim that the document is subject to the attorney-client privilege or the work-product protection shall not waive the protection or the privilege for either that document or for the subject matter of that document." (*Id.* ¶ 6). Paragraph 7 of the Confidentiality Order governs the return of "inadvertently disclosed materials":

> Except in the event that the requesting
> party disputes the claim, any documents the
> producing party deems to have been
> inadvertently disclosed and to be subject to
> the attorney-client privilege or the work-
> product protection shall be, upon written
> request, promptly returned to the producing
> party, or destroyed, at that party's option.
> If the claim is disputed, a single copy of
> the materials may be retained by the
> requested party for the exclusive purpose of
> seeking judicial determination of the
> matter, pursuant to Fed.R.Civ.P. 26(b)(5)(B)
> and Fed.R.Evid. 502.

Following the denial of his motion to dismiss for lack of jurisdiction (ECF Nos. 32 & 33), Marks filed an answer to the amended complaint and asserted several counterclaims against Maxtena (ECF No. 34).   Among other relief, Marks seeks a declaratory judgment establishing the value of his shares.

After a scheduling conference, the parties filed a joint motion for entry of a consent order to bifurcate discovery. (ECF No. 39).   The parties explained that, after meeting and conferring on several occasions, they had agreed to an initial period of discovery to address "issues relating to the valuation of Maxtena, Inc." (*Id.* at 2).[2]   The parties represented that delaying merits-based discovery was warranted so that "the mediation process [could be] given an opportunity to succeed." (*Id.*).   Based on this joint motion, a consent order was entered

---

[2] All page references to court documents in this memorandum opinion refer to CM-ECF pagination.

on April 24, 2012, pursuant to which the parties were given ninety (90) days to "conduct discovery relating *only* to financial and valuation issues." (ECF No. 40) (emphasis added). Consistent with the representations of the parties, the stated goal of this initial, non-merits discovery period was to "permit the Parties to prepare formal valuation reports" of Maxtena for use in a "good faith mediation." (*Id.*). By agreement of the parties, the deadline for this stage of discovery was later extended to October 25, 2012. (ECF No. 45).

In the six weeks prior to the October 25 deadline, the parties, along with a number of third-party subpoena recipients, filed more than a dozen separate discovery motions, many of which were accompanied by related motions to seal or to expedite briefing. Although the specific facts and relief requested varies from motion to motion, the briefs are permeated with accusations of discovery abuses by both sides. To summarize, Maxtena points the finger at Marks for turning what was supposed to be a limited, low-cost period of initial discovery into an unwieldy fishing expedition about all facets of Maxtena's business, which has resulted in the issuance of more than forty (40) nonparty subpoenas and the production of over 40,000 pages of documents – the vast majority of which are irrelevant to valuation issues. Marks, in turn, casts blame on Maxtena. He argues that, but for Maxtena's incomplete discovery responses

and attempts to conceal information relevant to the company's value, there would be no need for extensive third-party discovery or the slew of discovery motions that he has been forced to file and defend.

Amidst this flurry of motions practice, Marks sought an extension of the initial non-merits discovery period. By a Memorandum Opinion and Order issued on November 6, 2012, the financial and valuation period of discovery was extended by sixty (60) days. (ECF No. 119). The parties were also given twenty-one (21) days to complete all briefing on outstanding discovery motions. (*Id.*).

## II. Scope of Permissible Discovery

At the heart of many of the pending motions is the parties' dispute regarding the proper scope of this initial stage of discovery. Thus, before turning to any individual motion or group of motions, it is appropriate to examine the permissible scope of discovery under both the Federal Rules of Civil Procedure and the specific circumstances of this case.

Typically, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Where good cause is shown, "discovery of any matter relevant to the subject matter involved in the action" may be ordered. *Id.* "Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence." *Id.* Importantly, however, "all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D.Md. 2010). This rule requires the frequency or extent of discovery to be limited if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "(ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or "(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C)(i)–(iii).

Here, as noted, the consent order explicitly limits this initial period of discovery to "financial and valuation issues." (ECF No. 40 ¶ 1). Despite jointly proposing the language, the parties offer vastly different views on how this phrase should be interpreted.

In Maxtena's view, the scope of "financial and valuation discovery" should be quite narrow because the valuation of a company is a straightforward process. According to Maxtena,

Marks should be able to value the company under any of the commonly acceptable methods of valuation based on a limited universe of information (*e.g.*, financial statements, fixed assets schedules, business plans) — all of which were included in the documents produced by Maxtena.   Maxtena contends that Marks has violated the letter and spirit of the consent order by engaging in a campaign to harass Maxtena's customers, investors, and business partners through the issuance of third-party subpoenas seeking irrelevant and duplicative information. Maxtena further asserts that Marks's attempts to obtain every document related to Maxtena's business amount to a thinly veiled effort to acquire proprietary information that will assist Marks in establishing a competing company.

Not surprisingly, Marks offers a much different perspective.   Marks argues that he cannot reach a conclusion about Maxtena's fair market value based exclusively on information provided by Maxtena itself.   In Marks's opinion, it is far too easy for a company to withhold information that is highly relevant to its value but that may not be readily apparent from its books – a concern that Marks believes is valid given Maxtena's purported discovery abuses.   Specifically, Marks alleges that Maxtena has been deliberately evasive in responding to his discovery requests, supplementing its responses with certain documents only after Marks has received the information

9

in question from third-party subpoenas.  In light of this purported pattern of misconduct, Marks contends that the scope of the initial stage of discovery cannot be limited to what Maxtena unilaterally declares is necessary to conduct a valuation, but instead must encompass anything that could affect the value of the company – regardless of whether such information may be cumulative or held by a stranger to this action.

Hampered by their long history of mistrust and a quickly deteriorating relationship between their attorneys, neither party presents a truly reasonable view of the proper scope of "financial and valuation" discovery.  Contrary to Maxtena's position, nothing in the consent order limits Marks to seeking only the specific categories of information used in commonly accepted valuation methods.  The parties certainly could have chosen a specific valuation method and limited this initial period of discovery accordingly.  Absent such an agreed-upon limitation, however, Maxtena's proposed parameters are simply too narrow given the broad scope of discovery generally permitted by Fed.R.Civ.P. 26(b)(1).  Moreover, Maxtena's position ignores the realities of this case and the parties' history.  In light of the contentious circumstances surrounding Marks's termination and Maxtena's perceived (if not actual) failure to include certain responsive documents in its initial

production, Marks's reluctance to rely exclusively on information provided by Maxtena may be justified.

Marks, however, goes too far in the other direction. Permitting his broad discovery requests and numerous third-party subpoenas to stand without alteration would ignore the rule of proportionality that must be considered in determining the proper scope of discovery. Marks's expansive approach ignores that the cost-benefit balancing factors set forth in Fed.R.Civ.P. 26(b) "apply to all aspects of discovery." *Victor Stanley*, 250 F.R.D. at 260 n. 10. These factors are particularly relevant here given that the ostensible purpose of this initial stage of discovery is to avoid the costs of prolonged litigation by reaching an early settlement.

In sum, because the parties were not able to find a middle ground on their own, it is necessary to review the pending motions "with an eye toward proportionality." *Fisher v. Fisher*, No. WDQ-PWG 11-1038, 2012 WL 2050785, at *5 (D.Md. June 5, 2012). Along with the factors set forth in Rule 26(b)(2)(C), an email exchange between the parties' counsel provides helpful guidance in striking a balance. As part of the meet-and-confer process for bifurcating discovery, Marks's attorneys sent a detailed email to counsel for Maxtena that listed "categories of material" that Marks would want in order to "perform a full and complete valuation" of the company. (ECF No. 57-2, at 5).

Maxtena's counsel responded by stating "we should be able to provide most of [these categories of materials]," although "some categories . . . are just not available." (*Id.* at 8). Maxtena's counsel also expressed concern regarding some of the broader and more vaguely worded categories, including, for example, "[e]mails regarding relationships between involved individuals," noting "we are not clear how that would relate to our exercise in any event." (*Id.*). These points of agreement and disagreement are instructive in addressing the pending motions.

## III. Marks's Motion to Compel Discovery

Marks seeks an order compelling Maxtena to provide "proper responses" to his interrogatories and document requests. (ECF No. 57). Maxtena responds that the motion to compel should be stricken for non-compliance with Local Rule 104.8 (ECF No. 82)[3] and that, in any event, Maxtena's supplemental discovery responses have rendered Marks's motion moot (ECF No. 89-1).[4]

Local Rule 104.8 outlines the procedure to be followed where, as here, a party asserts that "the opposing party

_____

[3] The "corrected" version of the brief in support of Maxtena's motion to strike – *i.e.*, ECF No. 82 – will be considered here.

[4] Maxtena's substantive opposition to the motion to compel was filed as a sealed exhibit to Marks's reply brief. (ECF No. 89-1).

provided   substantially   inadequate   discovery   responses." *Anderson v. Reliance Standard Life Ins. Co.*, No. WDQ-11-1188, 2011 WL 4828891, at *1 (D.Md. Oct. 3, 2011).   Pursuant to this procedure,   once   it   has   been   determined   that   "informal communications [will] not resolve the dispute, the requesting party may serve a motion to compel on the opposing party (not the Court), receive a response, and serve a reply."   *Id.*   "Only *after* this exchange may the requesting party file the papers with the Court."   *Id.* (emphasis added).

As Maxtena observes, Marks violated Local Rule 104.8 by filing his motion to compel directly with the court without first serving his motion on Maxtena and attempting to meet and confer with Maxtena's counsel.   Instead, Marks filed an "Emergency Motion For Leave To File Motion To Compel," arguing that his failure to follow Local Rule 104.8 was justified because of an upcoming hearing on a related motion to quash a third-party subpoena.   (ECF No. 55).   Although the court postponed the motions hearing in response to this emergency motion (ECF No. 60), Marks did not withdraw the motion to compel.   Maxtena argues that, had Marks followed the procedures required by Local Rule 104.8, many of the issues raised in his motion would have been resolved without the need for the court's involvement.   (ECF No. 123, at 2).   Marks does not offer any additional explanation for his lack of compliance with Local

13

Rule 104.8, but instead urges that his motion should be considered on the merits. (ECF No. 108, at 1-6).

At this point, it is difficult to ascertain what, exactly, constitutes the "merits" of Marks's motion to compel. Maxtena's supplemental discovery responses appear to have rendered moot many of the deficiencies identified in Marks's original motion. Although Marks maintains that the issues identified in his original motion to compel "remain unchanged," he identifies only a handful of specific deficiencies that persist. (ECF No. 89, 7-10). The lack of clarity regarding what is inadequate about the current state of Maxtena's discovery responses is precisely what Local Rule 104.8 seeks to avoid by encouraging parties to narrow their disputes prior to seeking judicial intervention. Both parties should take care in the future to adhere strictly to the Local Rules of this court; failure to do so may provide a basis for entering sanctions. *See* Local Rules, Appendix A.

Nonetheless, the lack of an order expressly denying Marks's emergency request for leave to file his motion to compel constitutes good cause to suspend the requirements of Local Rule 104.8 in these circumstances. *See* Local Rule 604 (establishing that the court, upon "good cause shown," may suspend the provisions of any Local Rule). Accordingly, Maxtena's motion to strike will be denied to the extent it seeks relief regarding Marks's motion to compel, and the few substantive inadequacies

left unresolved by Maxtena's supplemental discovery responses will be addressed. As set forth below, Marks's motion to compel will be granted in part and denied in part.

### A.   General Objection Regarding Time

Maxtena asserts a general objection to the extent that Marks seeks information that is more than three years old, arguing that such data is not necessary to perform a valuation of the company. (ECF No. 89-1, at 9). In the email exchange between the parties regarding the scope of the initial stage of bifurcated discovery, however, Marks represented that he would likely seek a number of categories of materials "since inception," including general ledgers, financial statements, and sales journals. (ECF No. 57-2, at 8). At that time, Maxtena raised no objection to this proposed timeframe. (*See id.*). Moreover, Maxtena has only been in existence since May 2007 (ECF No. 5 ¶ 5), meaning that Marks is only seeking a total of five years of information and data. Maxtena fails to demonstrate that the costs of producing an additional two years of information and data outweigh the benefit that Marks would receive from the information. Accordingly, Maxtena's general objection regarding time will be overruled, and Maxtena will be ordered to provide responsive information and data older than three years, to the extent it has not already done so.

**B.    General Objection Regarding Contact Information**

In his original motion, Marks asks the court to overrule Maxtena's general objection to producing the home addresses or telephone numbers of any of its employees or customers based on privacy concerns.  (ECF No. 57-1, at 7).  In his reply, Marks specifically seeks the contact information for fifty-two (52) potential investors identified by Maxtena in its supplemental response to Interrogatory No. 14, as well as the contact information for Amy Embry, an individual who Maxtena identifies as a consultant in response to Interrogatory No. 13.  (ECF No. 89, at 9).  At this time, it is not clear that the burden associated with producing this potentially sensitive information is outweighed by its likely benefit, particularly because such information is unlikely to be of "importance" in resolving the issue of valuation.    Fed.R.Civ.P.   26(b)(2)(C)(iii). Accordingly, Maxtena's objection will be sustained as to these individuals.

**C.    Maxtena's Invocation of Rule 33(d) in Interrogatory Responses**

In its supplemental responses to Interrogatory Nos. 1-11, 16, and 18, Maxtena states that the information sought by Marks can be "determined" from certain documents produced during

discovery.  (ECF No. 89-2, at 5-18).[5]  Maxtena argues that the form of its responses is permitted by Fed.R.Civ.P. 33(d).  (ECF No. 89-1, at 11-20).  Marks objects to Maxtena's reliance on Rule 33(d), arguing that the burden is not "substantially the same" for him to extrapolate the relevant information from the business records in question given that he has not been employed by Maxtena for more than two years.  (ECF No. 89, at 8-10).  Marks's position has merit.

Rule 33(d) provides that where:

> the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

Fed.R.Civ.P. 33(d).  Invoking Rule 33(d) is appropriate when responding "to those discovery requests requiring compilation or analysis, accomplished as easily by one party as another, or

---

[5] The interrogatories in question seek, *inter alia*, the identity of all current and former customers of Maxtena; the identity, price, and volume of each product sold to those customers; the identity of all prospective Maxtena customers; the identity of every owner of Maxtena stock or stock options; and the identity of all investors or potential investors.  (ECF No. 89-2, at 5-18).

where neither side has clear superiority of knowledge or familiarity with the documents"; in other words, "Rule 33 is well-suited to reply to inquiries of an intensely objective nature." *United Oil Co., Inc. v. Parts Assocs., Inc.,* 227 F.R.D. 404, 419 (D.Md. 2005).

Here, although much of the information sought by Marks is factual in nature, it cannot be characterized as "intensely objective." Moreover, although it is true that Marks likely has some degree of familiarity with Maxtena's business records, Maxtena certainly has superior knowledge regarding such documents, particularly those post-dating Marks's termination. Accordingly, Maxtena's reliance on Rule 33(d) is misplaced, and Maxtena will be ordered to provide answers to Interrogatory Nos. 1-11, 16, and 18 in the traditional manner.

As set forth above, Marks's motion to compel will be granted in part and denied in part.[6]

## IV. Marks's Motion for Sanctions

Marks moves for sanctions pursuant to Fed.R.Civ.P. 37(c), arguing that Maxtena's repeated attempts to mislead Marks about

---

[6] In his reply, Marks also argues that Maxtena's response to Interrogatory No. 15 – which asks about the company's communications with potential investors – is deficient. (ECF No. 89, at 9). In a later filing, Marks represents that he received an "additional supplemental production" from Maxtena on November 3 containing communications with potential investors. (ECF No. 131, at 2 & n. 1). Hence, any deficiency regarding Interrogatory No. 15 has apparently been rendered moot.

the company's true value warrant dismissal of the amended complaint. (ECF No. 69). Specifically, Marks contends that Maxtena encouraged him to rely on the company's own document production rather than engage in third-party discovery, even though Maxtena's initial production omitted certain key valuation documents that Marks learned of through nonparty document productions. (*Id.* at 2-10). In addition to questioning the factual accuracy of Marks's assertions, Maxtena responds that Marks's motion to compel should be stricken in accordance with Local Rule 105.8 because dismissal is an extreme remedy that is clearly unwarranted here. (ECF No. 82).

Despite the litany of purported discovery abuses that Marks identifies in his motion, nothing in the present record suggests that any sanction – let alone the extreme remedy of dismissal – is warranted here. Although it appears that Maxtena may have been somewhat careless in its initial document production, Marks fails to offer conclusive evidence that Maxtena or its counsel has been deliberately evasive. What is more, Marks's allegations of misconduct are undermined by the fact that he had to file a second brief to "correct" a factual inaccuracy about what Maxtena's supplemental document production actually contained. Accordingly, Marks's motion for sanctions will be

denied.[7]   Because Marks's motion for sanctions fails on the merits, Maxtena's motion to strike will be denied as moot to the extent it seeks relief in connection with the sanctions motion.

## V.   Motions Regarding Third-Party Subpoenas

A number of the pending motions relate to Marks's issuance of subpoenas to nonparties pursuant to Fed.R.Civ.P. 45.   When a nonparty objects to a Rule 45 subpoena, it may "file a motion to quash or modify the subpoena pursuant to Fed.R.Civ.P. 45(c)(3)(A), seek a protective order pursuant to Fed.R.Civ.P. 26(c), or . . . object to production of documents by opposing a motion to compel under Fed.R.Civ.P. 45(c)(2)(B)." *United States v. Star Scientific, Inc*., 205 F.Supp.2d 482, 484 (D.Md. 2002) (citations omitted).   A subpoena must be quashed or modified when it (1) does not allow a reasonable time to respond; (2) requires a nonparty to travel more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person; (3) requires disclosure of privileged matters; or (4) subjects a person to undue burden.   Fed.R.Civ.P. 45(c)(3)(A).   A subpoena may be quashed or modified in certain

_____

[7] On November 30, 2012 - well after briefing had closed - Marks filed a "Submission of Supplemental Evidence in Support of His Motion for Discovery."   (ECF No. 131).   Again on December 10, Marks filed a second "Submission of Supplemental Evidence" in support of, *inter alia*, his motion for sanctions.   (ECF No. 133).   Even if these belated filings were considered, they would not alter the conclusion that dismissal is a drastic sanction that is not warranted based on the present record.

other limited circumstances, including where the subpoena requires the disclosure of confidential commercial information or the opinions of unretained experts. Fed.R.Civ.P. 45(c)(3)(B).

### A. James Loving

The parties both affirmatively seek relief regarding a subpoena *duces tecum* issued by Marks to nonparty James Loving ("Loving"), an independent contractor who serves as Maxtena's contract CFO. Although Loving responded to the subpoena,[8] Marks seeks to compel the production of dozens of additional emails sent by or to Loving through his Maxtena email account. (ECF No. 81-1, at 4). Marks contends that all of these emails are responsive to the subpoena and are physically accessible by Loving. (*Id.*). Maxtena counters that the emails in question are Maxtena's property, such that Marks's repeated demands for Loving to produce them constitute an improper attempt to "steal" the documents from a corporate party through use of a subpoena issued to a nonparty individual. (ECF No. 72-1, at 10-12).

In light of representations made in recent filings, the propriety of issuing subpoenas for corporate email records to nonparty corporate agents need not be addressed. In its reply brief filed on November 5, Maxtena represents that it has now

---

[8] As described in Section VI below, many of the documents that Loving did produce are the subject of a privilege dispute.

produced all non-privileged emails from Loving's Maxtena account that are "arguably relevant to Maxtena's valuation," such that there is no longer a basis for demanding production of these documents from Loving.  (ECF No. 116, at 1-33).  The next day, Marks filed a notice indicating that he would not submit a reply in support of his motion to compel.  (ECF No. 120).  In doing so, Marks effectively declined to dispute either the fact or sufficiency of Maxtena's production of the Loving emails. Accordingly, both parties' motions regarding the production of emails from Loving's Maxtena email account will be denied as moot.

### B.   Thuraya Telecommunications Company

Nonparty Thuraya Telecommunications Company ("Thuraya") seeks to quash the Rule 30(b)(6) deposition subpoena issued by Marks (ECF No. 46), a request in which Maxtena joins (ECF No. 52).[9]  Thuraya argues that the subpoena must be quashed because it violates Rule 45(c)(3)(A)'s 100-mile rule and is unduly burdensome.  (ECF No. 46-1, at 4-12).  Because it is dispositive, only Thuraya's latter argument will be addressed.

"Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) usually raises a

---

[9] In its motion, Thuraya does not seek relief from the court with respect to the subpoena *duces tecum* served on it by Marks. (ECF No. 46-1, at 2 n. 1).

question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source." 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008). This inquiry is "highly case specific" and involves "an exercise of judicial discretion." *Id.* "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05-901, 2005 WL 1025799, at *1 (D.Md. May 2, 2005) (internal quotation marks omitted).

Weighing the relevant factors here, Thuraya has met its burden of establishing that the deposition subpoena imposes an undue burden and must be quashed. Thuraya is a United Arab Emirates ("UAE") company that has a business relationship with Maxtena. Marks seeks to depose a Thuraya corporate representative on a broad range of topics relating to this relationship, including, among other things, Thuraya's customers and prospective customers of any goods that incorporate Maxtena technology; all intellectual property, trade secrets, and inventions of Maxtena that might "potentially" be used in connection with products supplied by Thuraya; and any "actual, proposed, or contemplated investment" in Maxtena by Thuraya. (ECF No. 46-3, at 7-8). Thuraya has made a credible showing

that it would incur substantial expense to prepare and send a corporate representative from the UAE to Columbia, Maryland, to testify as to each of these topics.   Thuraya also represents that the information sought *via* the subpoena is confidential and proprietary in nature, such that its disclosure to competitors – including Marks himself – could have harmful results.   Finally, and most importantly, it is not clear that the information sought by Marks pursuant to the subpoena is necessary to form a valuation of Maxtena for purposes of settlement discussions.

It is true, of course, that Maxtena's relationship with Thuraya – which Marks characterizes as "an important customer" (ECF No. 56, at 4) – may have some bearing on the company's value.   But the most pertinent information about this relationship can be gleaned from documents formalizing the relationship itself, at least one of which Marks concedes he has received in response to the document subpoena issued to Thuraya. Although Marks makes general overtures about the need for third-party discovery in light of Maxtena's purported discovery shortcomings, he does not allege any specific instances of non-disclosure with respect to the Maxtena-Thuraya relationship.

In sum, weighing the burden that nonparty Thuraya would endure in complying with the subpoena against the value that any information likely to be obtained would have on "financial and valuation issues," it cannot be said that the subpoena is

24

reasonable at this stage of the litigation. Accordingly, Thuraya's motion to quash will be granted.

    **C.   Robert Demers**

Nonparty Robert Demers ("Demers"), a Vice President at Thuraya, also seeks to quash the deposition subpoena issued by Marks (ECF No. 46), a request in which Maxtena joins (ECF No. 52). Demers attests that he has no personal knowledge of any matter that might be relevant to this litigation because his role at Thuraya is to market products to the United States government – a task that does not involve any contact with service providers like Maxtena. (ECF No. 46-2, Demers Decl. ¶ 9). Marks contends that he must be permitted to depose Demers because, otherwise, he would have to "concede the truth" of Demers's statements disclaiming personal knowledge "without any opportunity to test those allegations." (ECF No. 56, at 11).

At this stage, Demers has shown entitlement to relief. "Where an executive has submitted an affidavit disclaiming unique personal knowledge, it is often appropriate to defer live depositions of that executive unless and until the examining party can demonstrate otherwise." *Alex & Ani, Inc. v. MOA Int'l Corp.*, Civ. No. 10-4590(KMW), 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011). Marks offers no conclusive evidence to contradict Demers's statements disclaiming personal knowledge. Accordingly, the Rule 45 deposition subpoena issued to Demers

will be quashed at this time.   Marks is free to seek leave of the court to re-issue the subpoena in the future if he can present conclusive evidence demonstrating Demers's personal knowledge of Thuraya's business relationship with Maxtena.[10]

### D.   Michael Lincoln, Esq.

Nonparty Michael Lincoln, Esq. ("Lincoln"), Maxtena's corporate counsel, also seeks to quash the deposition subpoena issued by Marks or, in the alternative, for a protective order barring his deposition.   (ECF No. 92).   By separate motion, Maxtena seeks the same relief.   (ECF No. 91).[11]   Both Lincoln and Maxtena generally argue that the subpoena places an undue burden

---

[10] As noted, on December 10, 2012, Marks filed a "Submission of Supplemental Evidence" in support of, *inter alia*, his opposition to Demers's motion to quash.   (ECF No. 133).   Marks contends that an email chain produced by Maxtena on December 8 "tend[s] to belie" Demers's assertion that he had no personal knowledge of the Maxtena-Thuraya business relationship.   (*Id.* at 2 (citing ECF No. 133-2)).   Upon examination, this email chain does not conclusively establish that Demers ever visited Maxtena's offices, or that he has personal knowledge of the business relationship that Maxtena and Thuraya ultimately formed.   In any event, the email chain certainly does not establish that Demers has information that will be of importance to establishing the value of Maxtena for purposes of mediation. As set forth above, Marks can seek leave of the court to re-issue the subpoena to Demers in the future, but should do so only if his request is supported by specific and conclusive evidence establishing Demers's personal knowledge and its relevance to this first stage of bifurcated discovery.

[11] As explained below in Section V.E, Maxtena's motion seeks relief with respect to two subpoenas:   the deposition subpoena issued to Lincoln, its corporate counsel, and the subpoena *duces tecum* issued to Philip Premysler, its patent agent.   (*See generally* ECF No. 91).

on Lincoln given that most of the information Marks will likely seek is protected by the attorney-client privilege and is irrelevant to issues of valuation. (ECF No. 92, at 1-2; ECF 91-1, at 6-8). Marks responds that Lincoln has not – and cannot – meet his burden to establish that all of his knowledge regarding Maxtena is protected by the attorney-client privilege given that Lincoln served not only as Maxtena's attorney but also as a business and financial advisor. (ECF No. 112, at 3-4). Thus, in Marks's opinion, Lincoln is not shielded from discovery simply by virtue of his role as an attorney but instead must appear for his deposition, where he will be free to assert the attorney-client privilege in response to specific questions. (*Id.* at 4). At this stage, Marks's arguments are unavailing.

Although nothing in the Federal Rules of Civil Procedure prohibits deposing an opposing party's attorney, efforts to do so typically are "view[ed] skeptically" and "permitted only when the information sought is not available from another source." *Carr v. Double T Diner*, 272 F.R.D. 431, 435 (D.Md. 2010). Generally, the party seeking the deposition must "establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome." *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987). Such requirements apply both where a party seeks to depose the opposing party's litigation

27

counsel, *see id.* at 84, and where the putative deponent is the non-moving party's general corporate counsel, *see Buyer's Direct Inc. v. Belk, Inc.*, No. 5:10-CV-65-H, 2012 WL 3278928, at *2-3 (E.D.N.C. Aug. 10, 2012).

At this stage, Marks fails to show that the information he seeks from Lincoln is not available from any other source. Indeed, Marks never explains with any specificity what information he *does* seek from Lincoln.  Instead, he generally refers to Lincoln's dual role as both corporate counsel and business advisor to Maxtena.  There are only two potential areas of questioning that can be ascertained from the parties' briefs, both of which are identified by counsel for Lincoln based on his conversations with Marks's attorney.  First, Marks apparently seeks to question Lincoln about his communications with a potential third-party investor in Maxtena.  Lincoln's counsel attests that he has already produced all such communications in response to a separate subpoena *duces tecum* issued by Marks. (ECF No. 92-7, Guthrey Decl. ¶ 2).  Marks does not refute this representation, nor does he explain why live questioning of Lincoln about this topic is necessary.  (*See generally* ECF No. 112).  The second potential area of questioning involves Lincoln's provision of advice to Maxtena in connection with a loan application.  (ECF No. 92-7, Guthrey Decl. ¶ 4).  In filings related to other motions, Marks expresses his belief

28

that these communications – which were produced by a third party and are subject to a claim of privilege by Maxtena – demonstrate that Lincoln fabricated certain corporate documents that are at the heart of the merits of this lawsuit.   (ECF No. 81-1, at 16-18).   Marks utterly fails to show how questioning Lincoln about this purported fabrication is relevant during this initial, non-merits period of discovery.

Because Marks has not met his burden of establishing a legitimate purpose for taking the deposition of Maxtena's corporate counsel during this stage of bifurcated discovery, the deposition subpoena issued to Lincoln will be quashed.

### E.   Phillip Premysler

Maxtena seeks to quash the subpoena *duces tecum* that Marks has attempted to serve on Phillip Premysler ("Premysler"), its patent agent.   (ECF No. 91).[12]   The Premysler subpoena seeks six

---

[12] It is unclear at this point whether Marks has properly effected service of the Rule 45 document subpoena on Premysler. According to Marks, Premysler has deliberately evaded service on a number of occasions, despite repeated requests to Maxtena's counsel for assistance in locating Premysler. (ECF No. 111, at 4-6).   Marks argues that because Premysler has actual notice of the subpoena by virtue of receiving it *via* certified mail, he should be deemed to have been served.   (*Id.* at 4 n. 1). Although most courts hold that Rule 45 requires personal service of a subpoena, "in certain circumstances constructive service will suffice."   9A Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2454 (3d ed. 2008); *see also Hall v. Sullivan*, 229 F.R.D. 502, 502-06 (D.Md. 2005) (explaining that although the Fourth Circuit has not addressed whether Rule 45 requires personal, in-hand service of a subpoena, the "better

categories of documents, all from 2009 to the present:  (1) all
contracts and agreements between Premysler and Maxtena; (2) all
communications between Premysler and Maxtena relating to "any
intellectual property, trade secrets, inventions, discoveries,
or other proprietary information of Maxtena"; (3) all documents
in Premysler's possession relating to "any intellectual
property, trade secrets, inventions, discoveries, or other
proprietary information of Maxtena"; (4) all documents related
to any services or products provided by Premysler to Maxtena,
including purchase orders and invoices; (5)  all documents
related to any patent applications prepared or filed by
Premysler on behalf of Maxtena; and (6) all communications
between Premysler and Maxtena or its counsel regarding any
subpoenas issued in this action.  (ECF No. 111-6, at 11-12).[13]

---

reasoned" minority approach focuses on whether the recipient has
"actual notice" of the subpoena in order to avail himself of the
protections afforded by the Federal Rules of Civil Procedure).
Although it is still not clear whether Premysler has received
actual notice of the subpoena, the merits of the parties'
arguments can be reached because Maxtena – having demonstrated a
personal right in the proprietary and confidential information
being sought by Marks – has standing to object to the subpoena.
*See United States v. Idema*, 118 Fed.Appx. 740, 744, 2005 WL
17436, at *2 (4th Cir. 2005) (a party has standing to challenge a
nonparty subpoena where the party "claims some personal right or
privilege in the information sought").

[13] The parties submit different versions of the Premysler
subpoena, which vary as to the timeframe of information
requested and the substance of the requests themselves.
(*Compare* ECF No. 91-3 *with* ECF Nos. 111-2 & 111-6).  The version

Maxtena principally argues that, at this stage, the subpoena is simply too broad as written and that any information regarding the company's intellectual property that might be relevant to the issue of valuation can be ascertained from documents already produced. (ECF No. 91-1, at 7-9). Marks responds that any single piece of information related to "intellectual property that is not yet the subject of a patent may be equally (if not more) important" to the company's value. (ECF No. 111, at 7).

Here, again, the parties' communications about this first stage of bifurcated discovery provides useful guidance. According to counsel for Marks, the categories of "information that we would want to perform our valuation" that are relevant to the Premysler subpoena include:  (1) "[p]ast and current employment agreements for employees and officers"; (2) "[c]opies of signed Proprietary Information, Invention and Non-Disclosure Agreements"; (3) "[a l]ist of all patents, trademarks, and similar intellectual property items owned or co-owned by the company"; and (4) "[e]mails regarding relationships between involved individuals." (ECF No. 57-2, at 5-6). Notably, the email from Marks's counsel outlining the proposed

---

of the subpoena that, according to Marks, was delivered to Premysler *via* certified mail on October 2, 2012 (*i.e.*, ECF No. 111-6) will be considered here.

scope of initial discovery makes no other mention of intellectual property.  In addition, and as noted above, Maxtena specifically objected to the vagueness of the proposed category for "[e]mails regarding relationships between involved individuals."  (*Id.* at 8).

Because Marks seeks categories of information that are substantially broader than those originally contemplated by the parties, Maxtena's motion will be granted.  The Premysler subpoena will be modified to seek production only of the following:  (1) copies of all patent applications prepared or filed by Premysler for, or on behalf of, Maxtena; (2) copies of any agreement by which Premysler agrees to provide services or products to Maxtena, whether as an employee, officer, or independent contractor; and (3) copies of any "Proprietary Information, Invention and Non-Disclosure Agreements" entered into between Premysler and Maxtena.

### F.   State of Maryland Entities

Nonparty the State of Maryland Department of Business and Economic Development ("the State") seeks to quash the deposition subpoena issued to nonparty Tomas Dann; the subpoena *duces tecum* issued to nonparty the Maryland Venture Fund Authority ("MVFA"); and the subpoena *duces tecum* issued to Peter Greenleaf, chairman of the MVFA.  (ECF Nos. 73 & 78).  On November 16, Marks filed a motion seeking an extension of time to respond to these motions.

(ECF No. 125).   In doing so, Marks represented that his attorney and counsel for the State expected that the relevant issues "will be resolved without the necessity of the Court's involvement." (*Id.* at 1).   Although Marks indicated that he would file either a substantive response to the motions or a stipulation of withdrawal by December 3, 2012, no such filing has been submitted.   Because the State consented to Marks's request for an extension and because Maxtena did not oppose it, Marks will have seven (7) days from the issuance of the Order accompanying this Memorandum Opinion to submit either a stipulation of withdrawal or a consolidated opposition to the State's motions.   In the event that Marks files the latter, the State will have an additional seven (7) days to file a consolidated reply in support of its motions.   Marks is, however, strongly encouraged to reach an agreement with the State that eliminates the need for further involvement by the court.

## VI. Marks' Motion for Determination of Claim Pursuant to Rule 45(d)(2)(B)

Pursuant to Fed.R.Civ.P. 45(d)(2)(B), Marks moves for a judicial determination regarding Maxtena's assertion of the attorney-client privilege and work-product protection with respect to certain documents produced by nonparty Loving.   (ECF

No. 93).[14]  Marks contends that the documents in question are not privileged and that, in any event, Maxtena has waived any claim of privilege that might have attached to the documents by virtue of Loving's disclosure and Maxtena's own failure to assert any objections to the Loving subpoena in a timely manner.  (*Id.* at 5-8).  Maxtena responds that the communications in question are clearly privileged and that there has been no waiver because each of the requirements of Fed.R.Evid. 502(b) have been met. (ECF No. 117, at 10-34).  As to the dispositive issue of waiver, Marks is correct.

## A.   Additional Factual Background

Before turning to the merits of the parties' legal arguments, a brief examination of the events precipitating

---

[14] Fed.R.Civ.P. 45(d)(2)(B) provides as follows:

> If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.  The person who produced the information must preserve the information until the claim is resolved.

Marks's motion is warranted.  As noted, Loving is an independent contractor who has served as Maxtena's contract CFO since May 2011.  On April 18, 2011, Loving and Maxtena signed a non-disclosure agreement "in connection with discussions . . . the parties have had or will have for the purpose of evaluating the possibility of a business transaction."  (ECF No. 117-3, at 2). An engagement letter that Loving sent to Maxtena's CEO on May 3, 2011, contains the following provisions regarding subpoenas:

> All information you provide to us in connection with this engagement will be maintained by us on a strictly confidential basis.  In the event [J. Loving & Company, CPAs] receive[s] a subpoena or summons requesting that we produce documents from this engagement or testify about the engagement, we will notify you prior to responding to it [if] we are legally permitted to do so.  You may, within the time permitted for us to respond to any request, initiate such legal action as you deem appropriate to protect information from discovery.  If you take no action within the time permitted for us to respond, or if your action does not result in a judicial order protecting us from supplying requested information, we may construe your inaction or failure as consent to comply with the request.

(ECF No. 117-2, at 3).

On August 21, 2012, Marks served a subpoena *duces tecum* on Loving seeking, *inter alia*, all of his communications with Maxtena and all documents in his possession, custody, or control

related to Maxtena. (ECF No. 117-4, at 9-10).[15] In his brief, Marks represents that "counsel for Maxtena received a service copy of the Subpoena" (ECF No. 93, at 1) – a point that Maxtena does not dispute in any of its briefs regarding the Loving subpoena (*see generally* ECF Nos. 72-1, 100, 116, & 117). The subpoena set a production deadline of September 17, which Loving apparently failed to meet. On September 20, Marks's counsel sent a letter directly to Loving, which copied Maxtena's litigation counsel and stated that Marks would seek this court's assistance if Loving did not respond by the end of the day. (ECF No. 117-6, at 3). Loving, who was unrepresented at that time, produced an unknown number of documents to Marks on September 21. (ECF No. 117-7, at 2). In its opposition, Maxtena represents that Loving did not provide these documents for review in advance of sending them to Marks. (ECF No. 117, at 8).

On October 2, Maxtena's counsel learned that Loving had produced one or more email chains involving Maxtena's corporate counsel. (*See* ECF No. 117-9). In response, Maxtena's counsel stated "[a]s I understand, Mr. Loving has inadvertently produced some privileged documents" and requested that Marks refrain from "using, disclosing or further reviewing" any communications

---

[15] Marks also served a deposition subpoena on Loving that is not at issue.

involving Maxtena's litigation or corporate counsel pending receipt of a letter "pursuant to Paragraph 7 of the [Confidentiality Order]." (ECF No. 117-10, at 3). On October 10, Maxtena's counsel sent a formal letter and privilege log to Marks's attorneys seeking, pursuant to Paragraph 7, the "return and/or destruction" of a subset of the documents produced by Loving that are purportedly covered by the attorney-client or work product privileges. (ECF No. 117-11). After a number of additional email exchanges between counsel regarding the rules applicable to Maxtena's claw-back request, Marks filed his Rule 45(d)(2)(B) motion. Following certain concessions made by Maxtena in its opposition (*see* ECF No. 117 at 12-26) and by Marks in his reply (*see* ECF No. 121, at 2-4), the documents (or portions thereof) that remain at issue for purposes of Marks's motion are, as labeled in Maxtena's privilege log and as grouped by the parties in their briefs: Nos. 2-7, 8, 9-10, 11-12, 13-15, 16-19, 20-24, 29, 31, 32, 33-35, 36, and 46.

### B.   Analysis

Although the parties devote much of their briefs to explaining why each document in question is or is not protected by the attorney-client privilege or the work-product protection, such an analysis is unnecessary here because Maxtena has waived its right to assert any privilege or protection that may have attached to the documents.

Typically, Fed.R.Evid. 502 applies in federal proceedings to determine whether the disclosure of a privileged or protected document results in a waiver.   Rule 502(b) reads, in relevant part, as follows:

> (b)   Inadvertent Disclosure. When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed.R.Evid. 502(b).[16]   All three prongs of Rule 502(b) must be met in order to find that a disclosure of a privileged or

---

[16] Although Rule 502 recognizes that the default test set forth in subsection (b) may be superseded by court order or agreement of the parties, *see* Fed.R.Evid. 502(d), (e), such an order or agreement must provide concrete directives regarding each prong of Rule 502(b) – *i.e.*, (1) what constitutes inadvertence; (2) what precautionary measures are required; and (3) what the privilege holder's post-production responsibilities are to escape waiver.   *See, e.g., Mt. Hawley Ins. Co. v. Felman Prod., Inc.*, 271 F.R.D. 125, 130, 133 (S.D.W.Va. 2010); *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2012 U.S. Dist. LEXIS 101778, at *21 (D.Md. July 23, 2012).   Otherwise, Rule 502(b) will be used to fill in the gaps in controlling law. *Id*.   The Confidentiality Order in this case contains a general non-waiver provision for privileged or protected materials that are inadvertently disclosed by the producing party, as well as a

protected document does not result in a waiver. *See, e.g.*, *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2012 U.S. Dist. LEXIS 101778, at *29 (D.Md. July 23, 2012); *Conceptus, Inc. v. Hologic, Inc.*, No 09-02280 WHA, 2010 WL 3911943, at *1 (N.D.Cal. Oct. 5, 2010). The party seeking the protection of Rule 502(b) bears the burden of proving that each of its elements have been met. *Amobi v. D.C. Dep't of Corrections*, 262 F.R.D. 45, 53 (D.D.C. 2009).[17]

---

related claw-back provision pursuant to which disputes regarding inadvertent productions of privileged documents must be judicially resolved "pursuant to Fed.R.Civ.P. 26(b)(5)(B) and Fed.R.Evid. 502." (*See* ECF No. 17-1 ¶¶ 6-7). Importantly, the Confidentiality Order does not define "inadvertence" and is silent as to either the parties' precautionary or post-production responsibilities to avoid waiver. Hence, all three prongs of Rule 502(b) govern this dispute.

[17] Although the parties vigorously dispute whether Maxtena should have followed Fed.R.Civ.P. 45(d)(2)(B) or Fed.R.Civ.P. 26(b)(5)(B) in asserting its claim of privilege and attempting to claw back the documents produced by Loving, both rules are procedural in nature and therefore have no bearing on the substantive waiver analysis. *See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2016.3 (3d ed. 2008) ("Rule 26(b)(5)(B) permits a privilege holder to . . . prevent further use of the material in the litigation until there is a ruling on whether the privilege applies, but it does not alter the standards for determining whether there has been a waiver."); *see id.* § 2464 (summarizing the procedural requirements set forth in Rule 45(d)(2)(B), which govern situations where "information subject to a claim of privilege . . . is produced in response to a subpoena"). In any event, both rules require the same action by the party or person asserting the claim of privilege – specifically, the "notif[ication of] any party that received the information of the claim and the basis for it." Fed.R.Civ.P. 26(b)(5)(B); Fed.R.Civ.P. 45(d)(2)(B). Here, by virtue of sending its claw-

Assuming, for the moment, that Loving's disclosure was indeed "inadvertent" within the meaning of Rule 502(b)(1), it cannot be said that Maxtena has met its burden of proving that it took reasonable steps to prevent that disclosure.[18]   As an initial matter, Maxtena mistakenly relies on two contractual agreements as evidence of its reasonable steps to prevent disclosure.   First, Maxtena points to its non-disclosure agreement with Loving.   According to Maxtena, this agreement "prohibits Loving from disclosing Maxtena's confidential documents and information." (ECF No. 117, at 31).   By its terms, however, the non-disclosure agreement applies only to communications and information exchanged for "the purpose of evaluating the possibility of a business transaction" between Loving's company and Maxtena.   (ECF No. 117-3, at 2).   All of the documents at issue here post-date May 3, 2011, the date on which Maxtena and Loving formalized their relationship.

---

back letter and accompanying privilege log to Marks on October 10, 2012 (ECF Nos. 93-1, 93-2), Maxtena complied with its notice obligations, regardless of which rule is applied.

[18] Whether Loving had permission to waive any privilege or protection on behalf of Maxtena is irrelevant because even in cases involving nonconsensual disclosures by third parties, the waiver inquiry focuses on the privilege *holder's* precautionary measures. *See, e.g.*, *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 243 (D.Md. 2005).

Second, Maxtena cites its engagement letter with Loving, which Maxtena characterizes as requiring Loving "to inform Maxtena of any documents that he intends to produce in response to a subpoena seeking Maxtena's documents, before he produces the documents." (ECF No. 117, at 31). The engagement letter contains no such requirement. All it obligates Loving to do is to notify Maxtena of his receipt of a subpoena prior to responding to it, at which point the burden is on Maxtena to seek judicial relief as it deems necessary. In the event that Maxtena fails to take any action or does so unsuccessfully, Loving is free to respond to the subpoena without any further consultation with Maxtena. Thus, neither of these documents constitutes the type of "reasonable steps" contemplated by Rule 502(b).

Moreover, the record is devoid of any evidence indicating that Maxtena took any precautionary measures once it received a copy of the subpoena issued to Loving. As Marks notes, Maxtena did not assert any objections to the subpoena before the initial production date, nor did it file a motion for a protective order based on any claim of privilege.[19] There is also nothing in the record that indicates Maxtena or its counsel instructed Loving

---

[19] As described above, Maxtena did eventually file a motion for a protective order with respect to the Loving subpoena, but only after Loving produced the privileged emails. (ECF No. 72).

to submit his documents for Maxtena's review prior to production or to conduct a privilege review of his own.   To the contrary, the only email between Maxtena's attorney and Loving regarding the subpoena before the court includes an unqualified instruction for Loving to respond to the subpoena as soon as possible to avoid a contempt order.   (ECF No. 95, at 141).

Maxtena states in its opposition that it had a "reasonable basis" for not taking any responsive action to the subpoena because it "had no reason to expect that privileged communications would be encompassed by Marks' subpoena."   (ECF No. 117, at 28).   This contention is patently meritless given that even a cursory review of the subpoena would have revealed its broad scope and the potential for responsive documents to include privileged communications.   Indeed, the second request in the subpoena seeks production of "*[a]ll* communications between [Loving] and Maxtena, Inc."   (ECF No. 117-4, at 9) (emphasis added).   Given the breadth of Marks's requests, as well as Loving's unrepresented status, it was not reasonable for Maxtena or its lawyers to assume that Loving would produce only non-privileged documents in response to the subpoena.

Because Maxtena has failed to meet its burden with respect to at least one of the required elements of Rule 502(b), there is no need to address the other two prongs.   *See Conceptus, Inc.*, 2010 WL 3911943, at *1.   Loving's disclosure effected a

42

waiver of any privilege or protection that otherwise may have attached to the documents.   This finding of waiver does not extend to any undisclosed communications and has no bearing on whether the documents disclosed by Loving are relevant to "financial and valuation issues."[20]

## VII. Maxtena's Motion for Order Regarding Disclosure of Discovery Materials to Interested Third Parties

Maxtena seeks entry of an order regarding the disclosure of materials designated as "confidential" pursuant to the Confidentiality Order to certain nonparties with an interest in the litigation.  (ECF No. 88).  Although Marks apparently agreed in principle to the entry of such an order, the parties' counsel disagreed about how to word the provision governing the disclosure of materials as to which a claim of privilege has been asserted, thereby necessitating the submission of yet another contested motion.   In briefing the motion, the parties narrowed their dispute and ultimately presented proposed orders that are nearly identical.   (*Compare* ECF Nos. 107-1 *and* 122-2).

---

[20] In some cases, a party's waiver of the attorney-client privilege or work-product protection through disclosure can extend to undisclosed communications concerning the same subject matter.   *See* Fed.R.Evid. 502(a).   Subject matter waiver is "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."   Fed.R.Evid. 502, advisory committee notes.   Here, there is no evidence of such conduct by Maxtena and, therefore, no basis for concluding that Loving's disclosure resulted in a subject matter waiver.

Accordingly, Maxtena's motion will be granted and the most recent proposed order submitted by Maxtena (ECF No. 122-2) will be entered.  The parties are free to share information with nonparties in accordance with the terms of that order and this Memorandum Opinion.

**VIII.     Maxtena's Motion for Protective Order**

Maxtena also seeks entry of a new protective order requiring that all documents produced to Marks by nonparty subpoena recipients automatically be designated "confidential" in accordance with the existing Confidentiality Order, except as otherwise agreed to by the parties or ordered by the court. (ECF No. 70).  Maxtena argues that such an order would be consistent with the goals of this first stage of discovery as it would obviate the need to conduct a time-consuming and expensive review of the 39,000-plus documents produced to date – all of which contain information that is proprietary to either Maxtena or the third parties.  (ECF No. 70-1, at 1-2).  Marks opposes the proposed order, arguing that it would improperly authorize a blanket confidentiality designation and would further complicate the litigation moving forward.  (ECF No. 83).

Marks is correct that the order sought by Maxtena appears to violate the Confidentiality Order, which specifically requires that any confidentiality designations be undertaken in good faith and not as a matter of routine.  *Cf. Minter v. Wells*

44

*Fargo Bank, N.A.*, Civ. Nos. WMN-07-2331, WMN-08-1642, 2010 WL 5418910, at *3 (D.Md. Dec. 23, 2010) (explaining that the use of an umbrella protective order like the Confidentiality Order in place here "does not relieve the parties of their burden to consider vigilantly the need for protection of each document" and that over-designating documents as confidential at the outset ultimately "delay[s] rather than expedit[es] the litigation").   Maxtena is also correct, however, in asserting that the primary goal of bifurcating discovery was to control costs prior to mediating.   Accordingly, Maxtena's alternative request for relief will be granted, and Maxtena will have ninety (90) days following the issuance of this Memorandum Opinion and accompanying Order to review the documents in question and make specific confidentiality designations consistent with the procedures set forth in the Confidentiality Order.   Until that time, the parties shall treat all documents produced in response to any third-party subpoena as "confidential," consistent with the existing Confidentiality Order and the new protective order that will be entered, as per Section VII of this Memorandum Opinion.

## IX.   Motions to Seal

Both parties, along with certain nonparties, have filed unopposed motions pursuant to Local Rule 105.11 and the

Confidentiality Order seeking to seal a number of the discovery motions, responses, and accompanying exhibits.

A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re The Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Before sealing any documents, the non-moving party must be provided with notice of the request to seal and an opportunity to object. *Id.* This requirement may be satisfied either by notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id.*

46

at 234. Finally, less drastic alternatives to sealing, such as filing redacted versions of the documents, should be considered. If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.* at 235.

### A. The Parties' Motions to Seal

Here, in ECF Nos. 58, 101, 109, 132, and 134, Marks seeks to seal the following documents, along with all accompanying memoranda and exhibits: (1) his motion to compel Maxtena's discovery responses (ECF No. 57) and reply thereto (ECF No. 89); (2) his motion for discovery sanctions against Maxtena (ECF No. 54) and his corrected memorandum in support thereof (ECF No. 69); (3) his emergency motion for leave to file his motion to compel (ECF No. 55); (4) his response to Thuraya's motion to quash (ECF No. 56); (5) his responses to Maxtena's original motion to strike (ECF No. 84) and corrected motion to strike (ECF No. 108); (6) his Rule 45(d)(2)(B) motion for determination of claim (ECF No. 93) and reply thereto (ECF No. 121); (7) his opposition to Maxtena's motion for a protective order (ECF No. 83); (8) his motion to compel nonparty James Loving (ECF No. 81); (9) his opposition to Maxtena's motion to quash the Loving subpoena (ECF No. 100); and (10) his submissions of supplemental evidence (ECF Nos. 131 & 133). In ECF Nos. 64, 118, and 124, Maxtena seeks to seal the following documents, along with all

accompanying memoranda and exhibits:  (1) its motion to strike (ECF No. 63); (2) its corrected motion to strike (ECF No. 82); (3) its opposition to Marks's Rule 45(d)(2)(B) motion (ECF No. 117); and (4) its reply in support of its motion to strike (ECF No. 123).

In each of their motions, the parties generally assert that the documents in question should be sealed because they include or refer to either confidential and proprietary information about Maxtena produced during discovery, or information as to which Maxtena has asserted a claim of privilege.  This latter justification is no longer viable given the finding of waiver set forth above.  Furthermore, the parties conclusorily argue that "by virtue of the existing Confidentiality Order, alternatives to sealing would not provide sufficient protection" for the documents in question.  This statement does not constitute the type of explanation required by Local Rule 105.11.  *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 438 (D.Md. 2006).  The parties do not, for example, explain why it would be inappropriate to file redacted versions of the briefs and exhibits in question.  Accordingly, the parties' requests to seal will be denied.  Each party will have fourteen (14) days to renew their requests to seal in a single, consolidated motion that:  (1) lists the docket number of each document to which their renewed motion applies;

(2) makes specific factual representations, for each document listed, that justify sealing; and (3) succinctly explains why alternatives to sealing, including redaction, would not provide sufficient protections.  If either party decides not to file a renewed motion within fourteen (14) days, the materials at issue in their respective motions will be unsealed at that time.

**B.   Nonparties' Motion to Seal**

In ECF No. 68, nonparties Thuraya and Demers move to seal the reply in support of their joint motion to quash (ECF No. 67).  Thuraya and Demers represent, however, that their reply does not contain any information subject to the Confidentiality Order in this case and that they filed their motion only as a result of Marks's motion to seal his opposition.  (ECF No. 68 ¶ 6).  Because no party has challenged these representations, the nonparties' motion to seal will be denied, and their reply will be ordered unsealed.

**X.   Conclusion**

A final word of caution.  Both parties share blame for the present state of the docket, which can only be described as unnecessarily complicated.  Moving forward, the parties – and particularly their counsel – need to exercise better judgment about the issues they put before the court.  There is no excuse for filing duplicative motions that needlessly raise the costs of this litigation.  All future discovery motions must comply

49

with the requirements of Local Rule 104.7 and, if applicable, Local Rule 104.8.  The certificate required by Local Rule 104.7 must also contain a specific and detailed representation by counsel for the moving party that (1) attests to the need for the motion and (2) confirms that the substance of the motion is not duplicative of any pending motion.   A separate Order consistent with the conclusions reached above will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge