IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MAXTENA, INC. | : |
|  | : |
| v. | : Civil Action No. DKC 11-0945 |
|  | : |
| JEREMY MARKS | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution are objections filed by both parties to the discovery rulings issued by Magistrate Judge William Connelly. Defendant Jeremy Marks has objected to seven rulings: (1) the October 31, 2013 order granting Plaintiff Maxtena, Inc.'s motion for a protective order in regards to Defendant's subpoena of Cooley, LLP; (2) the November 6, 2013 order directing Defendant to pay for the costs and notify Plaintiff of the topics that Dale Douglas will testify to at a second deposition; (3) the November 12, 2013 order vacating the order regarding the deposition of Michael R. Lincoln; (4) the December 20, 2013 order to Defendant to pay additional costs of the Neutral Examiner; (5) the January 28, 2014 order denying Defendant's request that Plaintiff respond to an interrogatory question and provide the email addresses of all individuals identified on Plaintiff's privilege log; (6) the May 8, 2014 order that certain communications were protected from

disclosure by the common interest doctrine; and (7) the June 17, 2014 order denying Marks's request that Maxtena supplement its responses to its discovery requests. (ECF Nos. 301, 317, 321, 358, 400, 454, and 466). Plaintiff Maxtena, Inc. has objected to the February 7, 2014 order requiring Maxtena to produce unredacted emails between Maxtena, its legal counsel, and Dr. Elisabeth Chaves, the wife of Maxtena's CEO. (ECF No. 413). Also pending is a motion filed by Defendant for certification of immediate appeal pursuant to 28 U.S.C. § 1292(b) of the undersigned's November 7, 2013 Order and Memorandum Opinion denying Defendant's motion for partial judgment on the pleadings. (ECF No. 318). Finally, Defendant has filed a motion for leave to file an amended answer to Plaintiff's second amended complaint. (ECF No. 439). The issues have been fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, motion for certification will be denied, the motion for leave to file an amended answer will be granted, Defendant's objections will be overruled, and Plaintiff's objections will be sustained in part.

## I.   Background

In light of the many Memorandum Opinions that have been issued previously (*e.g.*, ECF Nos. 32, 136, 162, and 286), some familiarity with the tangled procedural history of this case

will be presumed.  Maxtena, Inc. ("Maxtena") filed suit against Marks on April 13, 2011.  Following Marks's unsuccessful motion to dismiss for lack of personal jurisdiction, the parties agreed to engage in an initial period of "financial and valuation" discovery, ostensibly "[i]n an effort to facilitate settlement discussions." (ECF No. 40, at 1).  Ultimately, however, this initial period of valuation discovery accomplished little in the way of conciliation.  If anything, the dozens of disputes that arose during valuation discovery served to heighten the animosity and mistrust between the parties and their counsel.

Following an unsuccessful mediation before Magistrate Judge Jillyn K. Schulze, the parties began merits-based discovery, which has led to a fresh round of disputes over both the proper scope of discovery and the legal *bona fides* of each party's claims.  On August 20, 2013, this case was referred to Magistrate Judge Connelly for resolution of all discovery disputes.  (ECF No. 226).  To resolve the current set of disputes, a brief review of the allegations and claims asserted in the operative pleadings is warranted.

### A.  Maxtena's Second Amended Complaint

Maxtena alleges the following facts in its second amended complaint.  (ECF No. 199).  Maxtena is an antenna company specializing in "phased array technology" that was incorporated in 2007 under Virginia law.  On May 18, 2007, Maxtena and its

three founders – including Defendant Marks – entered into a "Shareholders Agreement." (ECF No. 192-6). Relevant for these purposes, the Shareholders Agreement contained a clause that stated that "[i]n the event of a termination of a Shareholder's employment by the Corporation for Cause, the Purchase Price shall be equal to One Hundred Dollars ($100)." (ECF No. 192-6 § 6(c)) ("$100-Buyback Provision").

In the summer of 2009, Maxtena began work on a marine-based phased array antenna system for a client located in Germantown, Maryland. (ECF No. 199 ¶ 16). Marks, who at the time served as the Chief Technology Officer of the company, acted as the lead engineer for this time-sensitive project. Maxtena alleges that Marks became increasingly absent and unresponsive during late 2009 and into early 2010 because he was instead devoting his time and energy to other commercial opportunities. (*Id.* ¶¶ 27-28). Marks allegedly shared highly confidential and proprietary information belonging to Maxtena with a third party, including certain schematic drawings associated with the marine-based antenna system. Marks also purportedly incorporated an entity known as "Elevation Semiconductor" in January 2010, which he intended to function as a direct competitor to Maxtena. (*Id.* ¶ 31).

On January 29, 2010, Maxtena held a board of directors meeting to discuss the possibility of reorganizing from a

Virginia corporation to a Delaware corporation. (*Id.* ¶ 32). Marks attended the meeting but allegedly did not disclose either the incorporation of Elevation Semiconductor or his sharing of confidential information with a third party. Near the end of the January 29 meeting, Marks made a motion to reincorporate Maxtena in Delaware. (*Id.* ¶¶ 32-33).

Throughout the spring of 2010, Marks and his associates allegedly began to develop business for Elevation Semiconductor. Maxtena, meanwhile, continued work on the marine-based antenna project for its Germantown-based client and also prepared to reorganize under Delaware law. On May 5, 2010, the Virginia corporation known as Maxtena ("Maxtena-Virginia") merged with its parent corporation, the Delaware corporation known as Maxtena ("Maxtena-Delaware"). (*Id.* ¶ 39). Marks approved the merger in his capacity as both a director of Maxtena-Virginia and Maxtena-Delaware.

Maxtena alleges that it discovered Marks's "disloyalty" and work on behalf of Elevation Semiconductor on July 7, 2010, at which time Marks admitted to sharing proprietary data belonging to Maxtena with third parties involved in Elevation Semiconductor. (ECF No. 199 ¶ 40). Marks purportedly explained his actions by stating that he needed a "backup plan" if things did not work out with Maxtena. (*Id.*). On July 26, 2010, Maxtena sent Marks a letter notifying him that he was being

terminated and stating that Maxtena was repurchasing his shares in the company for $100, pursuant to the $100-Buyback Provision in the Shareholders Agreement.  Marks refused to accept the letter.  (*Id.* ¶¶ 50-51).

Based on these facts, the second amended complaint asserts six counts against Marks.  Count I seeks a declaratory judgment that Maxtena is the rightful owner of Marks's shares in the corporation by virtue of the $100-Buyback Provision because (1) Marks was terminated for "cause," and (2) the Shareholders Agreement survived the merger of Maxtena-Virginia into Maxtena-Delaware "by design."  (ECF No. 199 ¶¶ 54-59).

Count II asserts an alternative theory of relief with respect to Marks's shares in the event that the Shareholders Agreement did not survive the merger.  (*Id.* ¶¶ 60-68).  Specifically, Count II seeks a declaration that the 875,000 shares of Maxtena-Delaware issued to Marks should be rescinded or cancelled because, at the time of the merger in May 2010, Marks had already committed gross breaches of the fiduciary and legal duties he owed to Maxtena-Virginia.  Count II alleges that if the Maxtena entities had been aware of Marks's misconduct in May 2010, Maxtena-Virginia would have exercised the $100-Buyback Provision in the Shareholders Agreement prior to converting Marks's shares in Maxtena-Virginia to Maxtena-Delaware stock. In the alternative to rescission or cancellation of Marks's

shares in Maxtena-Delaware, Count II requests the court to "fashion another remedy such as a constructive trust sufficient to make Maxtena whole." (*Id.* ¶ 68).

The remaining counts in the second amended complaint assert claims against Marks for breach of fiduciary duty (Count III); violation of the Virginia Trade Secret Act (Count IV); violation of the Virginia Business Conspiracy Statute (Count V); and breach of a proprietary information agreement Marks entered into with Maxtena (Count VI).

In his answer to the second amended complaint, Marks asserts twenty-five affirmative defenses. (ECF No. 191). Marks also brought a five-count counterclaim. In Count I, Marks seeks a declaratory judgment that he is the sole, rightful owner of 835,700 shares of Maxtena stock. (*Id.* ¶¶ 53-63). Marks supports this count with a number of alternative arguments. First, Marks alleges that the Shareholders Agreement applied only to Marks's shares in Maxtena-Virginia and did not survive the May 2010 merger, meaning that the contract has no applicability to Marks's termination, which occurred in July 2010. Marks alternatively argues that he was not validly terminated for "cause" and that his termination was not effected in compliance with either the Maxtena-Virginia Shareholders' Agreement or the Maxtena-Delaware Bylaws. Finally, Marks argues that enforcing the clause from the Shareholders Agreement would

7

amount to an unconscionable contractual penalty, as it would require Marks to forfeit shares worth "nearly $6,000,000" in exchange for $100.00.

In Count II, Marks seeks a declaratory judgment that his work with Elevation Semiconductor was not in breach of the proprietary information agreement he signed with Maxtena and that Maxtena does not own the work he produced during his time with Elevation Semiconductor. (*Id.* ¶¶ 64-73). In Count III, Marks seeks a declaratory judgment that either (1) establishes "the fair value that Marks is entitled to receive as consideration for the sale of his shares to Maxtena," or (2) orders that the fair value of his shares be determined by means of an appraisal. (*Id.* ¶¶ 74-80). To support this count, Marks alleges that, if the Shareholders Agreement is still applicable and if Marks was indeed validly terminated, he is entitled to receive fair value in exchange for his shares, which Maxtena has not offered. In Count IV, Marks alleges a breach by Maxtena of the Shareholders Agreement by allegedly failing to pay him any distributions, but at the same time, paying distributions to or for the benefit of other shareholders. In Count V, Marks alleges another breach of contract count, arguing that Maxtena was obligated to pay him an annual salary until he was validly terminated from his positions with the company.

## II.  Motion for Certification of an Interlocutory Appeal

On July 3, 2013, Marks filed a motion for partial judgment on the pleadings.  (ECF No. 192).  He argued that he was entitled to judgment on Count I of the second amended complaint as a matter of both contract interpretation and corporate law. Marks argued that the Shareholders Agreement – including the $100-Buyback Provision – did not survive the merger of Maxtena-Virginia into Maxtena-Delaware as the merger plan made no reference to the Shareholders Agreement and the Shareholders Agreement is directly contrary to the provisions in the Bylaws governing Maxtena-Delaware, a document that is specifically mentioned in the merger plan.

On November 7, 2013, the undersigned issued a Memorandum Opinion and Order rejecting Marks's arguments and holding that the plain language of the Shareholders Agreement makes clear that it applies to the shares issued by Maxtena-Delaware, a successor entity to Maxtena-Virginia.  (ECF Nos. 286 and 287). The opinion acknowledged that under Delaware case law, the general rule is that a corporate entity, along with its shares, ceases to exist upon its merger into a different corporate entity.  But this presumptive rule can be overcome if the parties specifically agree that the surviving entity would be governed by the disappearing entity's shareholders agreement, so long as the agreement is express.  This express agreement could

9

be made in a merger plan or even a shareholders agreement itself.   The opinion then engaged in contract interpretation of the Shareholders Agreement, and concluded that the terms of the contract were clear and unambiguous that the Shareholders Agreement survived the merger and applied to shares issued by Maxtena-Delaware and presently held by Marks.

On November 25, 2013, Marks filed a motion for certification of this opinion and order pursuant to 28 U.S.C. § 1292(b) (ECF No. 318), to which Maxtena opposed (ECF No. 344), and Marks replied (ECF No. 357).

"[Section] 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).   Section 1292(b) states in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Thus, a defendant seeking an interlocutory appeal pursuant to section 1292(b) must "show (1) that a controlling question of law exists (2) about which there is a substantial basis for

difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Riley v. Dow Corning Corp.,* 876 F.Supp. 728, 731 (M.D.N.C. 1992).   The decision to certify an interlocutory appeal is firmly in the district court's discretion.   *Id*. Unless all of the statutory criteria are satisfied, "the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b)." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,* 219 F.3d 674, 676 (7th Cir. 2000); *see also Riley,* 876 F.Supp. at 731 (stating that Section 1292(b) "requires strict adherence to all statutory requirements before certification will be allowed").   Moreover, the United States Court of Appeals for the Fourth Circuit has cautioned that "[section] 1292(b) should be used sparingly and . . . that its requirements must be strictly construed." *Myles v. Laffitte,* 881 F.2d 125, 127 (4th Cir. 1989); *see also Riley,* 876 F.Supp. at 731 ("The legislative history of [Section 1292(b)] suggests that there is a strong federal policy against piecemeal appeals."); *Beck v. Commc'ns Workers of Am.,* 468 F.Supp. 93, 95–96 (D.Md. 1979) ("Section 1292(b), a narrow exception to the long-standing rule against piecemeal appeals, is limited to exceptional cases.").   Certification under section 1292(b) is improper if it is simply "to provide early review of difficult

rulings in hard cases." *City of Charleston, S.C. v. Hotels.com, LP*, 586 F.Supp.2d 538, 548 (D.S.C. 2008).

The term "question of law," for purposes of section 1292(b), refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," as opposed to "whether the party opposing summary judgment had raised a genuine issue of material fact." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F.Supp.2d 612, 623 (D.Md. 2013). "A *controlling* question of law [includes] every order [that], if erroneous, would be reversible error on final appeal." *Id.* (*quoting Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3[d] Cir. 1974)) (emphasis added).

Here, the issue raised in Marks's motion – whether the Shareholders Agreement survived the merger – is not a "question of law" under section 1292(b), but is more appropriately characterized as the application of a legal principle to a set of facts.  The legal principle is that under Delaware corporate law, a shareholders agreement does not survive a statutory merger absent an express agreement to the contrary, either in the merger plan or the shareholders agreement.  The court applied that legal principle to the facts, specifically the Shareholders Agreement and Merger Plan.  Marks acknowledges the legal principle (*see* ECF No. 357, at 3 ("A clear and express statement is required in order to overcome the general rule that

12

a merger moots the governing agreement of the disappearing corporation."")); he objects to how that legal principle was applied to the facts of this case, namely whether the Shareholders Agreement and Merger Plan expressly state that the Shareholders Agreement survived the merger. There is no doubt that the question of whether the Shareholders Agreement survived is vitally important to both parties' positions. But on the spectrum of "controlling questions of law," running from whether summary judgment was properly granted to whether state or federal law should be applied, a question of contract interpretation falls closer to the summary judgment end of the spectrum, and is inappropriate to invoke the extraordinary remedy of early appellate review. *See Ahrenholz*, 219 F.3d at 676 ("that the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind."); *Great Lakes Gas Transmission Ltd. P'Ship v. Essar Steel Minn., LLC*, Civ. No. 09-CV-3037 (SRN/LIB), 2013 WL 4028144, at *5 (D.Minn. Aug. 7, 2013) (concluding that interpretation of an insurance policy, although a question of law, is not a controlling question of law as contemplated by section 1292(b)); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 426 F.Supp.2d 125, 128 (S.D.N.Y. 2005) (same); *Sigma Fin. Corp. v. Am. Int'l Specialty*

*Lines Ins. Co.*, 200 F.Supp.2d 710, 723-24 (E.D.Mich. 2002) (same).

Even if the issue could be considered a controlling question of law, it would not meet the requirement that immediate appeal would materially advance the litigation. Generally this requirement is met when resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation. *See generally* 16 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3930, at 505-10 (3$^{d}$ ed. 2012); *see also Orson, Inc. v. Miramax Film Corp.*, 867 F.Supp. 319, 322 (E.D.Pa. 1994) ("In determining whether certification will materially advance the ultimate termination of the litigation, a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.").

Marks argues that the status of the Shareholders Agreement is vital to Maxtena's case and is the core issue in dispute. Finality on the status of the Shareholders Agreement would narrow the issues for resolution, significantly advancing the termination of the litigation. Marks argues that permitting the Court of Appeals to decide the issue now will avoid the

14

possibility of having to redo discovery and trial on a central issue.

The survival of the Shareholders Agreement is a critical issue, but only to some of the parties' claims.  As explained above, there are six claims and five counterclaims, many of which do not turn on the Shareholders Agreement, including Maxtena's claims of breach of fiduciary duty, violations of the Virginia Trade Secret Act and Virginia Business Conspiracy Statute, and breach of the parties' proprietary information agreement.  A ruling by the Fourth Circuit on whether the Shareholders Agreement survived would not affect these claims in any way.  *See Hotels.com, LP*, 586 F.Supp.2d at 548 ("Since this litigation would continue before the court regardless of what the appellate court decided, the court cannot see how certifying this question for interlocutory appeal would materially advance this litigation towards a more efficient and expedient conclusion.").  Furthermore, a holding by the Fourth Circuit that the Shareholders Agreement did not survive the merger would not end the matter, as the court would then have to consider Maxtena's alternative arguments that were not reached in the November 7, 2013 opinion.  *See Difelice v. U.S. Airways, Inc.*, 404 F.Supp.2d 907, 909 (E.D.Va. 2005) (finding it far from certain that the termination of litigation would be expedited by an immediate appeal given that a reversal by the court of

15

appeals would still require the district court to consider the defendant's alternative arguments, which were strongly disputed).  "The mere fact that [the issue's] resolution at this time *may* save pre-trial and trial effort and expense is not determinative; that of course can be said of any interlocutory appeal." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir. 1989) (unpublished table decision) (emphasis in original).[1]  Consequently, Marks's motion for certification will be denied.[2]

## III. Motion to Amend Defendant's Answer

Marks has filed a motion to amend his answer to Plaintiff's second amended complaint to add the business judgment rule as an affirmative defense.  Marks contends that the need to assert

---

[1] Marks argues that he has been prejudiced in defending against Maxtena's other, non-Shareholders Agreement dependent claims, because Magistrate Judge Connelly has made discovery rulings adverse to Marks based on the conclusion that the Agreement survived the merger.  (*See, e.g.*, ECF No. 298 (vacating as moot a prior order permitting Marks to depose Michael Lincoln on the issue of whether the Shareholders Agreement survived the merger by design)).  This fact does not demonstrate that a departure from the ordinary course is warranted.  Many allegedly erroneous rulings in a case will have downstream effects.  That cannot be reason to grant the extraordinary remedy of certifying an issue for immediate appeal.

[2] Because Marks has failed to demonstrate that the status of the Shareholders Agreement is either a controlling question of law or that immediate appeal will materially advance the litigation, it is unnecessary to consider whether there are substantial grounds for difference of opinion on the controlling question of law at issue here.

this defense only arose after Plaintiff's recently filed opposition to Marks's motion to strike Plaintiff's supplemental and rebuttal expert witness disclosure. Marks contends that Maxtena - for the first time - seeks to redefine its damages claims against Marks in a manner that challenges Marks' business judgment in making a specific antenna product design decision, and for the first time disclaims any intention to measure that design decision against technical or engineering standards. Defendant filed a motion to amend his answer on April 11, 2014. (ECF No. 439), to which Plaintiff opposed (ECF No. 448), and Defendant replied (ECF No. 453).

It is undisputed that the deadline for moving for amendment under the scheduling order was May 16, 2013. Plaintiff moved to file a second amended complaint on that day, which was granted. In his answer to this new complaint, Defendant asserted two new defenses, neither of which was the business judgment rule. To file an amended pleading after the scheduling order's deadline, the moving party must satisfy first Rule 16(b)'s "good cause" standard pertaining to modification of the schedule, and then satisfy Rule 15(a)'s requirements pertaining to amending pleadings. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

Rule 16(b)'s "good cause" standard focuses on the timeliness of the amendment and the reasons for the tardy

filing.  Because a court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," *Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 707 (D.Md. 2011) (quotation marks and internal citations omitted), a movant must demonstrate that the reasons for the tardiness of its motion justify a departure from the rules set by the court in its scheduling order.  Thus, the primary consideration of the court in addressing whether "good cause" has been shown under Rule 16(b) relates to the movant's diligence.  *Montgomery v. Anne Arundel Cnty., Md.*, 182 F.App'x 156, 162 (4th Cir. 2006) (per curiam).  Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard."  *W. Va. Housing Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001).  "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end."  *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

Plaintiff contends that the second amended complaint accused Marks of trying to launch Elevation Semiconductor using the marine antenna data he developed for Maxtena.  Maxtena made its original Rule 26(a)(2) expert disclosure on June 17, 2013.  Maxtena solely addressed the cost, value, and utility of the marine antenna data and stated that Dr. Carlo DiNallo, Maxtena's

Chief Technology Officer, would testify regarding the technology itself, the efforts expended to develop the technology, and the advantage a competitor would gain if it obtained access to this technology.   These disclosures did not discuss supposed lost sales of the marine antenna or how Marks was personally liable for causing Maxtena's purported lost sales.   Marks's own disclosure also hewed closely to the antenna's technical aspects.   On January 13, 2014, Maxtena served what it deemed Rule 26(a)(2) supplemental and rebuttal expert witness disclosures.   According to Marks, for the first time this new disclosure presented a theory wherein Marks allegedly made poor design choices with respect to the marine antenna that related to work done at Elevation Semiconductor.   Consequently, Marks argues that these new disclosures presented a new theory: the marine antenna was not a product of real value, instead its design decisions by Marks were deserving of criticism.   Marks moved to strike these disclosures as it presented a drastically different theory of liability.   In its opposition to this motion, Marks contends that Maxtena presents yet another theory of liability.   It quotes its second amended complaint as laying out the different ways Marks breached his fiduciary duty: secretly incorporating Elevation Semiconductor; fraudulently misappropriating the marine antenna data; failing to give his full time and attention to Maxtena; and embarking on a path that

was contrary to Maxtena's best interests.  By contrast, in its opposition, Maxtena presented Marks' breach as causing error and problems that led to a failure to deliver timely the marine antenna, and making self-interested, conflicted design choices that led to a litany of development issues that would not have occurred had the old architecture been adhered to.  It also characterized Dr. DiNallo's criticism of Marks as having nothing to do with any claims of engineering malpractice, but rather focusing on Marks's mistakes that stemmed from his decision to abandon Maxtena's proven architecture in favor of an experimental new architecture, which by its nature meant that there would likely be production issues.  According to Marks, Maxtena's abandonment of criticizing Marks's technical skill means it must be second-guessing his business judgment.  Therefore, justice requires that Marks be permitted to assert a business judgment rule defense.

Not surprisingly, Maxtena sees things differently. According to it, Marks was well on notice that issues with Marks's business decisions were a part of this case.  The original complaint stated that Marks breached his duty of loyalty by embarking on a path that was contrary to Maxtena's best interests.  In his counterclaim, Marks goes to some length expressly to allege that his ouster from Maxtena, and its claims against him, have their origin in business disagreements between

Marks and Maxtena's CEO, Dr. Licul.  Specifically, Marks's counterclaim outlined the "significant differences of opinion regarding the strategic direction of Maxtena."  (ECF No. 34 ¶ 24).  While waiting to find out whether a contract with a buyer would move forward, Dr. Licul wanted to suspend Maxtena's operations and fire everyone but a few officers.  Marks, by contrast, wanted to continue to move forward on other projects as a hedge in case the contract did not come through.  Marks won that dispute.  The counterclaim goes on to document a disagreement between Marks and Licul regarding efforts to reduce the costs of producing a component for a project.  Marks argued for cost savings, Licul thought otherwise, contending that any extra costs could be extracted from the buyer.  Licul won that round, but Marks states that he pursued the development of the component at a lower cost on his time and expense.  In furtherance of these efforts, he incorporated Elevation Semiconductor.  The counterclaim also recounts the two men's disputes concerning whether Maxtena should be split into two. Eventually, according to Marks, Dr. Licul attempted to marginalize Marks and obtain Marks's share of the company. Therefore, according to Maxtena, it is hard to credit Marks as being diligent in raising the need for the business judgment defense given that he was characterizing the disputes between him and the company as difference of opinion at the board level.

In regard to Dr. DiNallo's opinions and Maxtena's subsequent characterizations of them, Maxtena argues that Dr. DiNallo's supplemental and rebuttal disclosures simply connected Maxtena's two theories of Marks's breach of the duty of loyalty it outlined in its second amended complaint: (1) Marks was in charge of developing the marine antenna, but essentially sacrificed his work for Maxtena on that project and became absent due to conflict with his competing activities with Elevation; and (2) Marks usurped a corporate opportunity by attempting to have Elevation develop technologies that Maxtena attempted to pursue. Specifically, Dr. DiNallo stated that Marks decided to pursue new architecture instead of using its tried-and-true old architecture because Marks was developing that new architecture at Elevation Semiconductor. Pursuing this new architecture caused a delay in production and resulted in loss of sales. Thus, the allegation concerning Marks's design decision was not based on the view that his technical design was poor, but that the decision was made to advance his own self-interested and competing work at Elevation. According to Maxtena, Dr. DiNallo's disclosures do not amend Maxtena's claims, but rather expand on the complaint's allegations. Maxtena also argues that Marks was not diligent as he sat on this supposed defense for too long, even if one views the revelation of the need for this defense as the date of the

22

supplemental disclosures, which occurred in January 2014, more than two months before this motion was filed.

Marks has demonstrated sufficient diligence.  The fact that Marks recounted differences in opinion about the direction of Maxtena in his counterclaim is of little relevance in determining what defenses are needed.  How the defendant sees his case does not mean that he necessarily has to rely on that view in defending his case if the plaintiff does not share that view in its complaint.  Maxtena has recently raised the business decisions of Marks and whatever delay Marks suffered is not significant given the parties' propensity to extend this case at every juncture.

Marks must also satisfy Rule 15, which provides that courts should "freely give leave [to amend a pleading] when justice so requires."  Fed.R.Civ.P. 15(a).  Therefore, the court should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted).  "An amendment is futile when the proposed amendment is clearly insufficient on its face, or if the amendment claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *El-Amin*

*v. Blom*, No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012).

Maxtena contends that Marks should not be permitted to add the business judgment rule defense because it is futile. Virginia has codified the business judgment rule at Va. Code Ann. § 13.1-690, which generally provides that a director is not liable for action taken or not taken as a director if he acts in accordance with his good faith business judgment of the best interests of the corporation.[3] The Supreme Court of Virginia has held that a director's act of secretly organizing a competitor was not a corporate act of the corporation, and, thus, the business judgment rule did not protect the director from a claim for breach of fiduciary duty to the corporation. *Simmons v. Miller*, 261 Va. 561, 577 (2001). Maxtena argues that these principles makes Marks's proposed defense futile because he breached his duty of loyalty to Maxtena by secretly forming and operating a competing business (Elevation Semiconductor), attempting to usurp corporate opportunities through Elevation, failing to give his full time and attention to Maxtena, and embarking on a path contrary to Maxtena's best interests. As

---

[3] "[T]he laws of the state of incorporation generally will govern matters involving the internal workings of a corporation." *Storetrax.com, Inc. v. Gurland*, 397 Md. 37, 52 (2007). Maxtena was incorporated in Virginia at the time Marks is alleged to have breached his duties.

such, according to Maxtena, the business judgment rule would have no application in this case.

Maxtena's arguments will be rejected as they are based on the view that the allegations in its complaint have been proven. That position is premature and, depending on the course of this litigation, could ultimately be unfounded.  The business judgment rule is not futile and Marks's motion to amend his answer will be granted.

## IV.  Objections to Magistrate Judge Rulings

Marks objects to six rulings of Magistrate Judge Connelly, all concerning non-dispositive discovery matters.  Maxtena objects to one of Judge Connelly's rulings, also concerning a non-dispositive discovery matter.  Under 28 U.S.C. § 636(b)(1), non-dispositive pretrial matters may be referred to a magistrate judge for hearing and determination.  A district judge may modify or set aside any portion of a magistrate judge's non-dispositive ruling "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  *Id.; see also* Fed.R.Civ.P. 72(a); Local Rule 301.5.a.  "The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C).  The "clearly erroneous" standard applies to factual findings, while legal conclusions will be rejected if

they are "contrary to law." *MMI Prods. v. Long,* 231 F.R.D. 215, 218 (D.Md. 2005).

> Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the magistrate judge. *See Tri-Star Airlines, Inc. v. Willis Careen Corp.,* 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999). Rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence. *Id.* "It is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." *Buchanan v. Consol. Stores Corp.,* 206 F.R.D. 123 (D.Md. 2002).

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda,* 390 F.Supp.2d 479, 486 (D.Md. 2005).

**A.   October 31, 2013 Order**

First, Marks objects to a decision to quash a subpoena issued by Marks to Cooley LLP, corporate counsel for Maxtena. The subpoena was served July 8, 2013 and sought production of documents responsive to eight categories:

> a.   All documents concerning the Merger.
>
> b.   All documents concerning whether the Maxtena-Virginia Shareholders Agreement survived the Merger by design.
>
> c.   All documents concerning the Clarified Reorganization Plan.
>
> d.   All documents concerning the Clarified Reorganization Plan Transmittal Email.

e. All documents concerning Maxtena-Delaware's plan and efforts to purchase Marks' Maxtena-Delaware shares pursuant to the Maxtena-Virginia Shareholders Agreement.

f. All documents concerning Marks' Termination.

g. All documents concerning the filing of the Litigation.

h. All documents concerning any ownership interest that Cooley LLP has or ever had in Maxtena-Delaware.

(ECF No. 204-2, at 10).[4]   Maxtena moved to quash this subpoena. On October 31, 2013, Magistrate Judge Connelly granted Maxtena's motion on multiple grounds.   (ECF No. 278).   As an initial matter, all, or virtually all of the information Marks sought from Cooley he already sought from Maxtena directly in his second set of document requests.   Any relevant, non-privileged documents in Cooley's possession would have to be disclosed by Maxtena since such documents are within Maxtena's control. Marks, in his request to Maxtena, specifically defined "you/your" as "include[ing] the person(s) to whom this Request is addressed, and all of that person's agents, representatives, and *attorneys*." (*Id.* ¶ 5 (*quoting* ECF No. 204-3, at 5 (emphasis

---

[4] The "Clarified" Reorganization Plan refers to an email from Mr. Lincoln of the law firm Cooley, LLP, to some Maxtena board members where Mr. Lincoln attached a "final version" of the Merger Plan with an added Section 2.4 "to clarify that your Stockholders Agreement survived the reincorporation as was intended."   This email was inadvertently disclosed by Maxtena's contract CFO.

added))).   From this request, Judge Connelly concluded that the Cooley subpoena was "redundant and may be viewed as an attempt to circumvent Maxtena to obtain privileged information Marks is not entitled to receive.   On this basis alone, the subpoena is quashed."   (*Id.* ¶ 6).   Furthermore, Judge Connelly found that the attorney-client privilege rules in Maryland applied and found that under that law, the documents fell within the privilege.   (*Id.* ¶¶ 16-17).   Marks objected to Judge Connelly's ruling on November 18, 2013.   (ECF No. 301).   Maxtena and Cooley each filed responses.   (ECF Nos. 329 and 330).

The majority of Marks's objection focuses on his contention that Judge Connelly erred in not applying Maryland's choice of law rules because of Judge Connelly's erroneous conclusion that the most significant communications in this case occurred in Maryland, the headquarters and principal place of business of Maxtena.   According to Marks, at the time of the disputed communications, Maxtena was headquartered in Virginia.   The choice of law rules would have directed Judge Connelly to apply either Virginia's or Delaware's privilege law, both of which prevents a corporation from asserting attorney-client privilege against a former director for documents produced while a director.

It is unnecessary to reach this question, as Judge Connelly engaged in this analysis as merely an alternative reason for

28

quashing the subpoena. Judge Connelly first wrote that
Maxtena's already existing obligation to produce relevant, non-
privileged documents pursuant to Marks's second request for
production of documents makes the Cooley subpoena "redundant and
may be viewed as an attempt to circumvent Maxtena to obtain
privileged information Marks is not entitled to receive." (ECF
No. 278 ¶ 6). The Cooley subpoena was redundant because Marks
requested that Maxtena produce any responsive documents within
its "control," a term Marks himself defined to include Maxtena's
agents, representatives, and attorneys. (*Id.* ¶ 5 (*quoting* ECF
No. 204-3, at 5)). Nevertheless, Marks argues that Judge
Connelly's finding was

> clearly erroneous because Plaintiff has
> neither produced nor logged Cooley documents
> that are ostensibly within its control. The
> magistrate judge quashed the Subpoena based
> on Maxtena-Delaware's obligation to produce
> documents within its control that are in
> Cooley's possession. Plaintiff has made no
> such productions. Nor has it included any
> documents within Cooley's possession on the
> Maxtena-Delaware privilege log. As a
> result, the magistrate judge's order that
> the Subpoena be quashed on this basis
> effectively forecloses Marks' ability to
> discover relevant documents and information
> and should be set aside.

(ECF No. 301, at 19).

   Marks's objection will be overruled. He provides no
argument that it was either clearly erroneous or contrary to law
to conclude that the appropriate avenue to seek these documents

is through a Rule 34 document request as opposed to a Rule 45
third-party subpoena.   Judge Connelly's conclusion concerning
the scope of "control" was consistent with numerous decisions of
courts in this district.   *See, e.g.*, *Goodman v. Praxair Servs.,
Inc.*, 632 F.Supp.2d 494, 515 (D.Md. 2009); *Poole ex rel. Elliot
v. Textron, Inc.*, 192 F.R.D. 494, 501 (D.Md. 2000).   Marks
argues that Maxtena has not met its obligation to produce the
documents.   In such a situation, however, the proper means is
not to issue a subpoena on the third-party, but instead file a
motion to compel.   *See Richardson v. Sexual Assault/Spouse Abuse
Research Ctr., Inc.*, 270 F.R.D. 223, 225-26 (D.Md. 2010).   Marks
filed such a motion on October 16, 2013 (ECF No. 270), which
Judge Connelly granted in part and denied in part on January 28,
2014 (ECF No. 383).   Judge Connelly's decision to quash the
subpoena on Cooley was not contrary to law or clearly erroneous
and, consequently, Marks's objection will be overruled.

   **B.   November 6, 2013 Order**

   The second discovery ruling at issue is a November 6, 2013
ruling concerning a new deposition of Dale Douglas.   Maxtena
deposed Mr. Douglas on June 27, 2013.   On July 18, 2013, Marks
served his Federal Rule of Civil Procedure 26(a)(2) disclosures.
These disclosures listed Mr. Douglas as an intended *expert*
witness for Marks.   Maxtena objected, arguing that it was
improper for Marks to designate Mr. Douglas as an expert without

30

his consent.  Additionally, Maxtena argued that it only deposed Mr. Douglas as a *fact* witness and it was prejudicial for Marks now to designate Mr. Douglas as an expert when it had not done so prior to Mr. Douglas's first deposition.

Judge Connelly agreed with Maxtena, finding that Marks's post-deposition expert designation of Mr. Douglas was prejudicial to Maxtena's preparation of its case.  (ECF No. 284 ¶ 12).  To remedy this prejudice, Judge Connelly permitted

> a second deposition of Mr. Douglas, not to exceed three (3) hours, where Maxtena will have a meaningful opportunity to query Mr. Douglas about his credentials and his opinions on the topics Mr. Douglas is expected to provide expert testimony.  Marks shall bear the reasonable costs of this second deposition, including Maxtena's reasonable attorney's fees.  In advance of this second deposition, Marks shall serve a notice to Maxtena listing a summary of the facts and opinions of Mr. Douglas.

(*Id.*).  Marks objected to this ruling on November 25, 2013 (ECF No. 317), to which Maxtena responded (ECF No. 343).

Marks contends that Judge Connelly assumed that because Mr. Douglas and Marks used to work together at Elevation Semiconductor, Marks knew what Mr. Douglas was going to testify about.  In fact, Marks has had no contact with Mr. Douglas and had no idea what he was going to testify about at his first deposition.  Accordingly, Marks argues that his failure to designate Mr. Douglas as an expert prior to his first deposition

was substantially justified and did not harm Maxtena because it had the same information as Marks did prior to the deposition. For these same reasons, Marks contends that he cannot know what Mr. Douglas will testify about at an upcoming deposition. (ECF No. 317).

The objection will be overruled. Even ascribing entirely innocent motives to Marks's actions, the fact of the matter is that he designated Mr. Douglas as an expert *after* Mr. Douglas was deposed as a fact witness. To allow the case to proceed without giving Maxtena a chance to examine Mr. Douglas in his new expert role would prejudice Maxtena. Judge Connelly's decision to remedy the prejudice by ordering Marks to provide a list of topics that Mr. Douglas will testify to and to shoulder the costs of the deposition was neither contrary to law nor clearly erroneous.

### C. November 12, 2013 Order

Marks objects to Judge Connelly's ruling of November 12, 2013, concerning the deposition of Michael R. Lincoln, Esquire. Mr. Lincoln is an attorney with Cooley, and is Maxtena's corporate legal counsel. On June 3, 2013, Marks issued a subpoena for Mr. Lincoln to appear at a deposition, identifying four topics of inquiry: (1) the structure and design of the merger between Maxtena-Virginia and Maxtena-Delaware; (2) the "Clarified" Reorganization Plan; (3) Cooley's investment in

Maxtena-Delaware; and (4) the improper plan to take Marks'
Maxtena-Delaware shares.

Maxtena moved to quash the subpoena and Judge Connelly
partially granted the motion on October 28, 2013. (ECF No.
271). Judge Connelly permitted Mr. Lincoln to be deposed only
on the second topic: the "Clarified" Reorganization Plan,
finding that details surrounding the "Clarified" Reorganization
Plan were relevant to the question of whether the Shareholders
Agreement in fact survived the merger. (*Id.* ¶ 13).

On November 7, 2013, however, the undersigned issued a
Memorandum Opinion and Order finding that the Shareholders
Agreement survived the merger by its plain language. Contending
that the one dispute on which Mr. Lincoln was permitted to be
deposed was now moot, Maxtena moved to cancel Mr. Lincoln's
deposition. On November 12, 2013, by Emergency Paperless Order,[5]
Judge Connelly vacated the October 28, 2013 order, finding that
in light of the November 7, 2013 Memorandum Opinion, the issue
was now moot. Marks objected to this order on November 26, 2013
(ECF No. 321), to which Maxtena and Mr. Lincoln each responded
(ECF Nos. 346 and 347).

Marks contends that although the court ruled that the
Shareholders Agreement survived the merger by its terms, Judge

---

[5] Mr. Lincoln's deposition was scheduled to occur the next
day.

Connelly's ruling was contrary to law because Mr. Lincoln's testimony remains crucial to Marks's defenses to Count II of Maxtena's Second Amended Complaint. Count II is an alternative theory should the court find that the Shareholders Agreement did not survive the merger. It seeks a declaration that Marks's shares should be rescinded or cancelled because, at the time of the merger, Marks had already committed his alleged gross breaches of fiduciary and legal duties owed to Maxtena. If Maxtena had been aware of Marks's actions before the merger, it would have exercised the $100-buyback provision in the Shareholders Agreement that was certainly in effect pre-merger.

Judge Connelly already limited the deposition of Mr. Lincoln to one topic: the "Clarified" Reorganization Plan, which Judge Connelly found was relevant to the question of whether the Shareholders Agreement survived the merger by design. While the November 7, 2013 opinion makes the issue of the parties' desires vis-à-vis the Shareholders Agreement moot, Marks contends that Mr. Lincoln's testimony remains crucial to his affirmative defenses to Count II, specifically bad faith, unethical conduct, fraud, illegality, and unclean hands. Marks argues that because Maxtena has not withdrawn Count II, it remains live and issues such as when the "Clarified" Reorganization Plan was initially created and why Lincoln described it as "final" to Maxtena's President are relevant to Marks's defenses.

34

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The unclean hands doctrine states that:

> courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance.  The doctrine does not mandate that those seeking equitable relief must have exhibited unblemished conduct in every transaction to which they have ever been a party, but rather that the particular matter for which a litigant seeks equitable relief must not be marred by any fraudulent, illegal, or inequitable conduct.

*Dickerson v. Longoria*, 414 Md. 419, 455 (2010) (citations and internal quotation marks omitted).  In other words, "[i]t is only when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim, that he is to be barred because of this conduct.  What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts."  *Jones v. Anne Arundel Cnty.*, 432 Md. 386, 412 (2013) (citations and internal quotation marks omitted).

Mr. Lincoln's deposition was intended to cover the narrow topic of the substance of the "Clarified" Reorganization Plan and what was meant by an October 29, 2011 email from Mr. Lincoln to Maxtena's President describing this "Clarified"

Reorganization Plan as final.   Marks does not argue that the "Clarified" Reorganization Plan remains relevant to whether the Shareholders Agreement survived the merger by design; the November 7, 2013 opinion determined that it survived by its terms, thereby precluding any resort to extrinsic evidence such as the "Clarified" Reorganization Plan.   Marks insists, however, that Mr. Lincoln's testimony remains relevant to his unclean hands defense to Maxtena's Count II: equitable relief based on Marks's alleged breaches of his fiduciary and legal duties to Maxtena.   As discussed above, however, the doctrine of unclean hands applies only where the relief a party seeks stems at least in part from its fraudulent, illegal, or inequitable conduct. The relief Maxtena seeks in Count II is a rescission of Marks's shares because Marks allegedly committed gross fiduciary breaches before the merger which, if Maxtena had been aware, would have led Maxtena to exercise the $100-buyback provision. Maxtena's alleged inequitable conduct, by contrast, was creating an *ex post* Reorganization Plan in order to shore up its position that the Shareholders Agreement was intended to – and did – survive the merger.   That alleged conduct, however distasteful, is completely unrelated to the source of Maxtena's Count II: Marks's alleged fiduciary breaches and subsequent concealment. Marks is not alleging, for example, that Maxtena induced Marks to breach his fiduciary and legal duties in order for Maxtena to

36

seek rescission of Marks's shares.  Instead, Maxtena's equitable
claim and its alleged wrongdoing concern two different matters.
Therefore, Judge Connelly's order vacating the order regarding
Mr. Lincoln's deposition was not contrary to law or clearly
erroneous and Marks's objection will be overruled.

### D.   December 20, 2013 Order

Fourth, Marks objects to Judge Connelly's December 20, 2013
ruling that the Neutral Examiner was not disqualified and that
Marks shall pay for additional costs incurred by the Neutral
Examiner.  This dispute involves a computer and a server.  The
computer is the one Marks used during his employment with
Maxtena and the server was used by Marks in connection with
Elevation Semiconductor.  Maxtena served on Marks discovery
requests that necessarily implicated the data electronically
stored on these devices.  Marks produced hard copies of
documents, but would not, even after repeated requests by
Maxtena, reveal whether he had searched for discoverable
documents stored on these electronic devices.  Maxtena filed a
motion to compel.  On September 30, 2013, Judge Connelly granted
Maxtena's motion, ordering the parties to confer and select a
computer forensic consultant (the "Neutral Examiner") who would
search the devices according to an agreed-upon protocol, with
the parties splitting the costs.  (ECF No. 260).  The parties
ultimately selected Technical Resource Center, Inc. ("TRC") as

the Neutral Examiner.   The parties then entered into an agreement with TRC, which stated that "TRC will obtain Clients' authorization prior to conducting any work that would result in exceeding a total billing of $10,000 plus storage, destruction, and cost of media."   (ECF No. 348-1 ¶ 4).   The agreement also quoted a price of $6,000.

TRC sent invoices to the parties for $20,720.00 total, or $10,360.00 per party.   Maxtena agreed to pay the amount owed. Marks objected, asserting that "[w]e have never authorized TRC to exceed the dollar amount stated in the agreement nor have you [TRC] advised us that amount would be exceeded."   (ECF No. 352 ¶ 3).   Neil Broom, President of TRC, wrote to Judge Connelly explaining that the original quote was based on the assurance of Marks's counsel that the search protocol would only turn up a "handful of privileged documents" that TRC would then need to preserve and forensically remove before providing the devices to Maxtena.   Instead, because the search terms provided by *Marks* to TRC were very broad, including the term "Maxtena," over 300,000 files met the search criteria.   Mr. Broom also explained that the parties instructed him to change the protocol and he had to participate in multiple conference calls and hundreds of emails discussing the scope of the work he was to perform.   TRC's position was that the parties "'authorized' the additional work each time they scheduled a conference call, changed the scope of

38

the work, had me rewrite the protocol, requested additional information, and required additional copies of the evidence; all of which exceed the original scope of work." (ECF No. 348-3). All of that necessarily costs money and Mr. Broom perceived the parties to authorize those costs by requesting him to perform work beyond the scope of the original agreement.

On December 20, 2013, Judge Connelly ordered Marks to pay his outstanding invoice to TRC. (ECF No. 352). Judge Connelly wrote that he "understands and appreciates Mr. Broom's predicament: the unexpected bombardment of requests and queries from the parties' counsel." Judge Connelly was not sympathetic to Marks's counsel's protestations:

> Mr. Smith is a private attorney. He presumably provides or has provided services for clients on an hourly basis. Mr. Smith knew or should have known Mr. Broom works on an hourly basis. Mr. Smith knew or should have known the multiple changes to the scope of work as requested by the parties would not be performed for free. The constant disagreement by counsel over every matter not surprisingly increased the cost of services as Mr. Broom sought to meet the parties' demands. . . . With such an unexpectedly large number of files, Mr. Smith knew or should have known Mr. Broom would have to dedicate more hours than originally anticipated because the files were not a mere handful as Mr. Smith assured. Thus Mr. Smith knew or should have known the costs to perform the tasks in accordance with the Protocol may exceed the original quote. Despite these circumstances Mr. Smith continued to utilize Mr. Broom's services as the Neutral Examiner.

(*Id.* ¶ 6).   Judge Connelly went on to acknowledge the efforts of Marks's counsel to shield his client from excessive costs by including the $10,000 limit in the contract, but found that he "apparently was not so cognizant about this matter when he sent multiple e-mails to Mr. Broom or when he requested Mr. Broom to perform a variety of tasks.   [I] find[] it was reasonable for TRC to assume, whenever the parties' counsel requested specific services from Mr. Broom, the client was 'authorizing' TRC to conduct such work."   (*Id.* ¶ 8).   Thus, Judge Connelly ordered Marks to pay TRC his share of the outstanding balance.   He did not disqualify TRC.   Marks objected to this order on January 3, 2014 (ECF No. 358), to which Maxtena responded (ECF No. 378).

Marks contends that he did not authorize any charges beyond the $5,000 stated in his contract with TRC.   Furthermore, he contends that the Neutral Examiner should be disqualified because this payment dispute has impugned his neutrality.

It is true that the parties initially authorized TRC to incur no more than $10,000 total, or $5,000 split equally between the parties.   Furthermore, the contract stated that no additional charges were to be incurred unless authorized by the parties and any controversy or claim will be settled by arbitration.   (ECF No. 348-1).   TRC incurred charges of over $20,720, which Marks argues was not authorized.   Judge Connelly, crediting the views expressed by TRC, concluded differently,

finding that Marks knew or should have known that TRC charges an hourly rate and that the original $6,000 quote was based on a scope of work that changed greatly over time.   Judge Connelly found that, consequently, Marks knew or should have known that the bombardment of emails, conference calls, and changes to the project would take the costs beyond the $10,000 initially authorized in the contract.

Marks's objection will be overruled.   Although the Neutral Examiner's failure fully to disclose the escalating costs is regrettable, Defendant has failed to demonstrate that Judge Connelly's order is contrary to law or clearly erroneous.   There is no allegation that Maxtena ran up the costs in an effort to use its superior financial resources to bleed Marks dry or that Marks did not in fact contribute his part in running up the costs.

The Neutral Examiner also will not be removed for a conflict of interest.   The fact that the Neutral Examiner's client – Marks – disputes the Neutral Examiner's billing does not mean that the Neutral Examiner can no longer be considered "neutral."   *Cf. United States v. O'Neil*, 118 F.3d 65, 71-72 (2[d] Cir. 1997) (presuming that criminal defense attorney will continue to execute his professional and ethical duties despite fee dispute with client).   Furthermore, any concerns over the effect of raw feelings between Marks and TRC are lessened by the

41

fact that Judge Connelly has ordered that Maxtena will pay all of TRC's costs going forward.  (ECF No. 351).

### E.   January 28, 2014 Order

Marks's fifth objection is to two portions of Judge Connelly's January 28, 2014 order.  Marks' interrogatory number two asks Maxtena to:

> Describe in detail the reasons for and circumstances surrounding the creation of the version of the Agreement and Plan of Reorganization of Maxtena, Inc. (which includes Section 2.4) attached to that certain email message from Michael Lincoln, Esq. dated October 29, 2011.  In your response, please also include the date on which Section 2.4 was drafted.

Maxtena refused to answer this interrogatory and Judge Connelly agreed, finding the issue moot.  He pointed to the November 7, 2013 opinion, which held that the plain language of the Shareholders Agreement survived the merger.  Because the issue of whether the Shareholders Agreement survived the merger has been resolved, "the issue concerning Section 2.4 of a non-binding, non-executed draft of the Agreement and Plan of Reorganization of Maxtena is moot."  (ECF No. 383 ¶ 10). Second, Marks objected to Maxtena's refusal to provide the email addresses of every person identified in its privilege log. Judge Connelly did not compel Maxtena to provide the requested email addresses, finding "[t]hat Marks has not cited any authority for the proposition that he is entitled to the email

42

address of every recipient of communication identified in Maxtena's privilege log." (*Id.* ¶ 15.d). Marks objected to this order on February 14, 2014 (ECF No. 400), to which Maxtena responded (ECF No. 418).

Marks makes two objections to the January 28, 2014 Order. First, he objects to Judge Connelly's decision not to compel Maxtena to respond to Marks's interrogatory concerning the "Clarified" Reorganization Plan. Many of Marks's arguments are identical to those made in connection with his objections to Mr. Lincoln's deposition and they will be rejected for the reasons discussed above. His only additional argument is that "evidence about fabrication of the 'Clarified' Reorganization Plan is relevant to witness credibility, motive, and planning related to Plaintiff's attempt to improperly take Marks' shares in the company for $100." (ECF No. 400, at 7 (*citing* Fed.R.Evid. 404(b), 607, and 608(a))). These arguments were not made to Judge Connelly and his decision not to order Maxtena to respond to this interrogatory was not clearly erroneous. *See Maxwell v. S. Bend Work Release Ctr.*, No. 3:09-CV-008-PPS-CAN, 2010 WL 4318800, at *2 (N.D.Ind. Oct. 25, 2010) ("Arguments not raised before a magistrate judge and raised for the first time in the objections filed before the district court are waived") (*citing United States v. Moore*, 375 F.3d 580, 584 n.2) (7th Cir. 2004)).

Marks's second objection is to Judge Connelly's decision not to require Maxtena to disclose the email addresses used by the individuals identified on Maxtena's privilege log. Rule 26(b)(5)(A)(ii) requires a party withholding information otherwise discoverable due to a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Guideline 10.d of the Local Rules requires that the party asserting the privilege should provide the following information for written communications: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document, including, when appropriate, the author, addressee, custodian, and any other recipient of the document, and when not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.  "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 406 (D.Md. 2005). Marks argues that he needs the email addresses of the

individuals identified on the privilege log to determine whether the correspondence was distributed in a manner that could not be controlled, thereby obviating any privilege.  He points to the fact that Maxtena and its counsel have sent supposedly privileged communications to Dr. Chaves at her Virginia Tech email address and to current Maxtena board members at their business email accounts, which he thinks may waive the privilege.

Marks's objections will be overruled.  While an employee's use of her employer's email system to communicate with her personal counsel may waive the privilege if the employee did not have a reasonable expectation of privacy as to the content of the communications, *see, e.g., In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 256-60 (Bankr. S.D.N.Y. 2005), Defendant has pointed to no law – and an independent search has revealed none – that a privilege log must contain the email addresses of every sender and recipient.  Consequently, Judge Connelly's decision in favor of Maxtena is not contrary to law and Marks's objection will be overruled.

### F.   February 7, 2014 Order

Maxtena has objected to Judge Connelly's February 7, 2014 order concerning alleged privileged documents.  In the course of document production, Maxtena withheld approximately fifteen emails involving Dr. Elisabeth Chaves, the wife of Maxtena's

CEO, Dr. Stanislav Licul.   Maxtena claimed these communications were protected by the attorney-client privilege and/or the attorney work product doctrine.   While Dr. Chaves was never an employee, officer, director, or stockholder for Maxtena, Licul stated that his native language is Croatian and as a non-native English speaker, he asked Dr. Chaves to help him understand legal documents connected to this case and to act as a liaison between Maxtena and outside counsel.   Licul brought Dr. Chaves to a meeting with Maxtena's outside counsel and discussed the possibility of using her as liaison.   Outside counsel agreed, on the condition that she would be subject to their direction and control.   Dr. Chaves was on emails between Licul and outside counsel concerning the draft complaint in this case.

Marks challenged Licul's assertions as to his command of the English language, stating that he had known Licul since 1997 and for that entire time he has demonstrated an ability fully to understand the English language and never once observed him use a Croatian translator or involve Dr. Chaves in business or legal dealings.   Furthermore, Marks observed that Licul was fully competent in his ability to explain both the business and legal impact of the merger to Maxtena's board.

Judge Connelly ruled that Dr. Chaves's communications with Maxtena and its outside counsel are not shielded by attorney-client privilege because Dr. Chaves has never been an employee,

officer, director, or stockholder of Maxtena. Nor are Dr. Chaves's communications shielded because she was the "functional equivalent" of a Maxtena employee, as she was not retained until Licul sought her assistance on this matter. Judge Connelly also did not credit Licul's assertion that Maxtena had to rely on Dr. Chaves because, as a small start-up company, it did not have the money in its budget for legal services. Additionally, Dr. Chaves was not acting as an intermediary that would extend the privilege as her presence was at the client's direction, not the attorney's and, furthermore, her presence was not "nearly indispensable" given Licul's prior competence in the English language. (ECF No. 395 ¶¶ 5-10).

Judge Connelly also rejected Maxtena's argument that this correspondence is protected by the work product doctrine. Judge Connelly found that Dr. Chaves is not Maxtena's attorney, consultant, surety, indemnitor, or agent. He also reviewed, *in camera*, the alleged privileged documents and found that the work product doctrine does not protect them from disclosure. (*Id.* ¶¶ 11-14). Maxtena objected to this order on February 24, 2014 (ECF No. 413), to which Marks responded (ECF No. 422), and Maxtena replied (ECF No. 436).

In Maryland, "[t]he party seeking the protection of the privilege bears the burden of establishing its existence." *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 415

(1998).  "[G]enerally the presence of a third party will destroy the attorney-client privilege."  *Newman v. State*, 384 Md. 285, 306 (2004).  There are situations, however, where the presence of a third-party, such as Dr. Chaves, does not constitute a waiver of the privilege.  One such situation in the corporate context is when the third-party is the "functional equivalent" of an employee for the corporation.  While this test has not been formally adopted by the Fourth Circuit or the Maryland Court of Appeals, a number of district courts in this circuit have applied the standard laid out by the United States Court of Appeals for the Eighth Circuit in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994).  *See, e.g., Digital Vending Servs. Intern., Inc. v. Univ. of Phoenix, Inc.*, No. 2:09cv555, 2013 WL 1560212, at *8-9 (E.D.Va. Apr. 12, 2013); *Flo Pac, LLC. V. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *8 (D.Md. Dec. 9, 2010); *MLC Auto., LLC v. Town of S. Pines*, No. 1:05cv1078, 2007 WL 128945, at *4 (M.D.N.C. Jan. 11, 2007); *DE Techs., Inc. v. Dell, Inc.*, No. 7:04CV00628, 2006 WL 2548203, at *2 (W.D.Va. Sept. 1, 2006). Judge Connelly rejected Maxtena's argument that Dr. Chaves was the functional equivalent of its employee because, unlike the situation in *DE Technologies*, Dr. Chaves did not have a pre-existing relationship prior to the sharing of confidential communications: "Dr. Chaves was not involved with Maxtena at all prior to her husband asking for her assistance with the

retention of Cameron McEvoy PLLC as outside counsel." (ECF No. 395 ¶ 8). He also rejected Maxtena's argument that its financial circumstances forced it to rely on Dr. Chaves's services given that Maxtena had already retained Mr. Lincoln with Cooley LLP. (*Id.* ¶ 9).

Maxtena argues that Judge Connelly misrepresented the *DE Technologies* decision and its apparent requirement that the functionally equivalent employee be in a preexisting relationship. In *DE Technologies*, the corporation used a friend (Blasdel) of one of the directors to help it obtain a patent. At issue was whether communications between the corporation and Blasdel were covered by the attorney-client privilege. The court held:

> Like the third party in *Bieter*, Blasdel was "intimately involved" in achieving DE's chief objective, obtaining a patent. Blasdel's participation was at the direction of DE, in order to assist attorneys in providing legal services. In addition, communications between Blasdel, DE, and DE's attorneys were made with the expectation of confidentiality. The court believes that it is especially appropriate to look beyond the existence of a formal employment relationship in those cases involving a small fledgling company which is compelled by circumstances to rely on compensation in kind, or even prior friendships with consulting specialists, in obtaining information required by the company's attorney in order to provide legal services.

2006 WL 2548203, at *2 (citations omitted). Maxtena argues that their situation is identical to that in *DE Technologies*. Dr. Chaves was involved in the review and revision of Maxtena's original complaint. Her participation occurred at the direction of Maxtena and its counsel. The parties understood their communications to be confidential. Finally, at the time, Maxtena was a start-up company of limited funds.

Judge Connelly's rejection of Maxtena's arguments is not contrary to law or clearly erroneous. While *DE Technologies* does not explicitly require a pre-existing relationship to create a functionally equivalent employee, it does characterize the third party as one who, "due to their relationship to the client, possess the very sort of information that the privilege envisions flowing freely." 2006 WL 2548203, at *2 (*quoting In re Bieter*, 16 F.3d at 938); *see also Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005) ("To determine whether a consultant should be considered the functional equivalent of an employee, courts look to whether the consultant had primary responsibility for a key corporate job . . . whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation, . . . and whether the consultant is likely to possess information possessed by no one else at the company."); *In re Copper Market*

*Antitrust Litig.*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001) ("The Supreme Court's functional approach in *Upjohn* [*Co. v. United States*, 449 U.S. 383 (1981)] thus looked to whether the communications at issue were by the Upjohn agents who possessed relevant information that would enable Upjohn's attorney to render sound legal advice."). All cases Maxtena cites concerned a third-party with a preexisting relationship; no cited cases had a situation like this, where the corporation brought in a third-party to serve as a legal translator. *See F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (documents shared with company's public relations and government affairs consultants were protected); *In re Beiter*, 16 F.3d at 938 (third party was a consultant hired to assist in a real estate development that later became the subject of litigation); *Digital Vending*, 2013 WL 1560212, at *9-10 (third party had on-going role as advisor to the corporation's Board of Directors and was frequently called upon for advice); *Safety Mgmt. Sys. V. Safety Software Ltd.*, No. 10 Civ. 1593(RJH)(DF), 2011 WL 4898085, at *2 (S.D.N.Y. Oct. 5, 2011) (corporation treated third-party as a principal); *Trs. of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 7-8 (D.D.C. 2010) (unpaid consultants frequently present at Board of Trustees' meetings); *MLC Auto.*, 2007 WL 128945, at *4 (third party was an engineer hired to perform site evaluation in

51

regards to property that later became the subject of litigation).   Maxtena does not contend that it had any prior relationship with Dr. Chaves before she was brought in to translate for Licul.   Nor was there any suggestion that Dr. Chaves possessed any information that would aid counsel in rendering legal advice.   Dr. Chaves's only responsibility was to act as a translator for Licul.   Consequently, Judge Connelly's conclusion that Dr. Chaves was not the functional equivalent of Maxtena's employee will not be disturbed.

Where the third-party is not the functional equivalent of an employee of the corporation, the attorney-client privilege may still extend to a situation where the third-party is acting as the intermediary between attorney and client.   The leading case is *Newman v. State*, 384 Md. 285 (2004), which involved the client's close friend who accompanied her to a meeting with her divorce attorney.   The attorney invited the friend into the meeting because he thought that the friend's presence would provide a "cool head in the room" as the client was distraught over the possibility of losing custody of her children.   The court, drawing on its previously stated rule that "[o]nly the client has [the] power to waive the attorney-client privilege," *Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 691 (2000), concluded that the client's acquiescence to her lawyer's suggestion that her friend accompany her in meetings did not

constitute waiver of her privilege as it was the attorney, and not the client, who suggested that the friend be present. "Where the third party is acting at the attorney's behest, as Landry did in the present case, the client's consent to the third party's continued presence does not constitute waiver of the privilege because the decision to include the third party was not made by the client, but rather by the attorney." *Newman*, 384 Md. at 308.

Judge Day applied *Newman* in *Khoshmukhamedov v. Potomac Elec. Power Co.*, No. AW-11-449, 2012 WL 1357705 (D.Md. Apr. 17, 2012). Drawing on an attorney-client privilege treatise, he held that "[i]f a third party is present or becomes party to the confidential communications, the privilege applies if the presence of the third party is *necessary* for the client to obtain informed legal advice." *Id.* at *4 (emphasis added) (*quoting* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 264 (5th ed. 2007)). Serving as an interpreter of verbal or technical language could be necessary, but the party must be "nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications; necessity is not defined as mere convenience." *Id.* (*quoting* Epstein, at 264). Judge Day found the communications at issue were privileged because the client was a non-native English speaker and relied on the third party to

understand the litigation and facilitate his relationship with his attorneys. *Id.* at *6.

Judge Connelly relied upon these two cases in concluding that Dr. Chaves was not acting as an intermediary such that the attorney-client privilege remained intact. Distinguishing *Newman*, he pointed to the fact that the client (Maxtena) - and not its attorney - made the decision to include Dr. Chaves. (ECF No. 395 ¶ 6). Judge Connelly also did not credit Licul's representations that he needed Dr. Chaves to help him understand "legal English," thereby not making Dr. Chaves "nearly indispensable" in facilitating attorney-client communications. Judge Connelly found that, if anything, Dr. Chaves was not necessary at all, as "sufficient information has been presented that Dr. Licul is conversant in and understands English, even 'legal English' since he oversaw a corporate merger of Maxtena from a Virginia entity to a Delaware entity." (*Id.* ¶ 7).

Judge Connelly's decision that the intermediary doctrine did not apply because the attorney – and not the client – facilitated the third party presence was not contrary to law. Maxtena cites to an opinion by Judge Grimm which states that "[t]he third party may be present at the attorney's *or the client's* behest." *Flo Pac*, 2010 WL 5125447, at *8 (emphasis added). Judge Grimm did not cite controlling authority for this statement and acknowledged that there is authority for the

proposition advanced in *Newman*. *See id.* (*citing* Epstein, at 261). In any event, even accepting Judge Grimm's position regarding who may facilitate the third party's presence, this does not make Judge Connelly's conclusion regarding Dr. Chaves contrary to law or clearly erroneous, as the *Flo Pac* opinion also states – as did Judge Day in *Khoshmukhamedov* – that "the privilege only applies if the services performed by the non-lawyer are *necessary* to promote the lawyer's effectiveness." *Id.* (emphasis added). Judge Connelly's decision that Dr. Chaves was not necessary because he did not credit Licul's representations as to his English comprehension was not clearly erroneous or contrary to law. Therefore, Maxtena's objections to Judge Connelly's decision on attorney-client privilege grounds will be overruled.

Documents not protected by attorney-client privilege may still be protected by the attorney work product doctrine. Judge Connelly ruled – after *in camera* review – that these documents are not protected by the work product doctrine. Maxtena also objects to this portion of Judge Connelly's ruling. The work product doctrine is codified at Rule 26(b)(3)(A), which states that

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's

> attorney, consultant, surety, indemnitor,
> insurer, or agent).

Maxtena, as the party asserting the doctrine, bears the burden of demonstrating its applicability. *Solis v. Food Empl'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011).

Maxtena argues that the documents in question concern the original complaint and therefore are attorney work product in the sense that they are documents that were prepared in anticipation of litigation. Maxtena acknowledges that Judge Connelly does not hold otherwise. Instead, it disagrees with Judge Connelly's determination that the doctrine does not extend to Dr. Chaves because she was not a consultant or agent of Maxtena.

"Agency is the fiduciary relation which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control and consent by the other so to act." *Ins. Co. of N. Am. v. Miller*, 362 Md. 361, 373 (2001) (*quoting Green v. H & R Block, Inc.*, 355 Md. 488, 503 (1999)). "Although such a relationship is not necessarily contractual in nature, it is always consensual, and its creation is to be determined by the relations of the parties as they exist under their agreements or acts. The ultimate question is of intent." *Id.* (internal citations omitted). In support of its position,

Maxtena points to the declarations of Dr. Licul and Mr. Timothy
McEvoy of Cameron McEvoy, PLLC, Maxtena's counsel.   Dr. Licul
states that he asked Dr. Chaves in his capacity as Maxtena's CEO
to help him understand legal documents.    The two of them met
with McEvoy to discuss the arrangement and agreed that Dr.
Chaves would serve as intermediary between Maxtena and McEvoy,
subject to McEvoy's direction.  According to Licul and McEvoy,
Dr. Chaves agreed to this arrangement and agreed to keep all
communications confidential.    (ECF Nos. 413-2 ¶¶ 4-6, 413-3 ¶¶
2, 5).   Maxtena argues that this indicates Maxtena and McEvoy's
intent for Dr. Chaves to act on their behalf.   Furthermore, Dr.
Chaves manifested her intent to act as Maxtena's agent by orally
agreeing so to act and by performing the requested work.   But
for the request by Licul - Maxtena's CEO - she would have had no
involvement in this matter.

    Marks, in response, points to the fact that an agency
relationship must be consensual, *Miller*, 362 Md. at 373, but
there is no indication that Dr. Chaves consented to act as an
agent or consultant for Maxtena.   Marks argues that Licul and
McEvoy can certainly testify as to their intention, but there is
no declaration from Dr. Chaves - either here or before Judge
Connelly - as to her intentions.   Maxtena admits that "Dr.
Chaves was traveling for several weeks during the time the
underlying issues were being briefed and was not able to sign a

Declaration in a timely manner," (ECF No. 413, at 9 n.3), although it never mentioned this in its briefing to Judge Connelly.

Due to the absence of any testimony from Dr. Chaves, it was not clearly erroneous for Judge Connelly to conclude that Dr. Chaves was not Maxtena's attorney, consultant, surety, indemnitor or agent, such that communications from her to Maxtena and its outside counsel are not protected by the work product doctrine.

But this conclusion alone only means that anything produced by *Dr. Chaves* in anticipation of this litigation is not protected by the doctrine; it does not necessarily follow that anything prepared by Maxtena or its counsel that Dr. Chaves saw or came into contact with is not so protected. Documents prepared by Maxtena or its attorneys in anticipation of litigation are ordinarily protected from disclosure. Fed.R.Civ.P. 26(b)(3)(A). The protection afforded by the doctrine can be waived, but unlike the attorney-client privilege, mere disclosure to a third party ordinarily will not eliminate the privilege. As the Fourth Circuit has explained:

> The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule. Disclosure to a person with an interest common to that of the attorney or

the client normally is not inconsistent with
an intent to invoke the work product
doctrine's protection and would not amount
to such a waiver.  However, when an attorney
freely and voluntarily discloses the
contents of otherwise protected work product
to someone with interests adverse to his or
those of the client, knowingly increasing
the possibility that an opponent will obtain
and use the material, he may be deemed to
have waived work product protection.
Additionally, release of otherwise protected
material without an intent to limit its
future disposition might forfeit work
product protection, regardless of the
relationship between the attorney and the
recipient of the material.  In other words,
to effect a forfeiture of work product
protection by waiver, disclosure must occur
in circumstances in which the attorney
cannot reasonably expect to limit the future
use of the otherwise protected material.

*In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981) (citations
omitted).  Judge Connelly stated that he reviewed *in camera* the
documents at issue and found that the attorney work product
doctrine did not protect from disclosure Dr. Chaves'
communications with Maxtena and its outside counsel.  Maxtena
has indicated that the communications at issue consist of
strings of emails, only parts of which were prepared by Dr.
Chaves, the remainder being authored by Maxtena or its counsel
and merely shared with Dr. Chaves.  Those portions of the email
strings prepared by Maxtena or its counsel are potentially
protected by the work product doctrine unless it is determined
that they were not prepared in anticipation of litigation or the

59

inclusion of Dr. Chaves constituted a waiver.  Consequently,
Judge Connelly is instructed to reexamine the communications at
issue and permit redactions of those portions that were prepared
by Maxtena or its counsel in anticipation of litigation unless
he concludes that the protection of the work product doctrine
has been waived.

### G.   May 8, 2014 Order

Marks objects to Judge Connelly's May 8, 2014 order holding
that certain communications between Maxtena's counsel and Dr.
Chaves were privileged and protected from disclosure pursuant to
a valid common interest agreement.  Following the February 7,
2014 adjudication of the privilege issue concerning Dr. Chaves's
communications in 2011, Maxtena added more documents to its
privilege log, specifically communications between Chaves's
counsel and Maxtena.  Maxtena asserted that they were privileged
based on a common interest, specifically Chaves's involvement in
the case as a potential witness.  Marks wrote to Judge Connelly,
taking issue with Maxtena's asserted privilege and requesting
that Judge Connelly direct Maxtena to submit all the subject
documents for an *in camera* inspection.  (ECF No. 403).  Maxtena
responded by letter, disputing Marks's positions.  (ECF No.
410).  Marks returned with another letter, taking issue with
Maxtena's arguments.  (ECF No. 411).  On April 2, 2014, Judge
Connelly held a telephone conference where this issue, among

others, was discussed.   Marks's counsel declares that Judge
Connelly said he would review the documents *in camera* and that
Maxtena should submit a two-page accompaniment concerning the
applicability of the alleged oral common defense agreement
between counsel for Maxtena and Dr. Chaves.   Marks's counsel
further recalls that he asked Judge Connelly whether he would
also permit Marks to make a submission concerning the common
interest doctrine and the documents being withheld.   Judge
Connelly said he would assess whether he wanted briefing from
marks after reviewing the documents and Maxtena's submission.
Marks's counsel states that he agreed to this procedure, but "it
was never discussed or contemplated that Maxtena would submit
its *written submission* to the Court *in camera* or that Marks
would be barred from evaluating Maxtena's arguments before the
Court rendered a decision and making an informed choice about
what to do in light of the submission itself." (ECF No. 454-1 ¶
7).   Maxtena's counsel remembers the telephone conference
differently, stating that Marks's counsel inquired as to whether
the letter would be submitted *in camera*, to which Judge Connelly
replied that it could be submitted *in camera*.   Maxtena states
that Marks's counsel expressly agreed to this procedure,
including the possibility that the letter would be submitted *in
camera*.   On April 17, 2014, Marks wrote to Judge Connelly,
arguing that the privilege log entries are too generic to

identify what specific documents are at issue and, therefore, Judge Connelly should order Maxtena to provide a privilege log separately listing each document.  Additionally, Maxtena should be directed to provide Marks with a copy of any accompanying materials submitted to the court.  (ECF No. 443).

Judge Connelly did not respond to this request and issued his ruling on May 8, 2014.  He found that an oral common interest agreement between Maxtena and Dr. Chaves has been existence since November 8, 2013.  Maxtena and Dr. Chaves share a unitary interest to protect their common legal interest, *i.e.*, minimizing litigation with Marks, avoiding liability and keeping themselves informed about matters that could impact their positions.  Maxtena has properly withheld certain privileged communications created by Maxtena's counsel and Dr. Chaves and the sharing of privilege materials between counsel because they merit common interest protections.  (ECF No. 450).  On May 27, 2014, Marks objected to this decision (ECF No. 454), and Maxtena responded (ECF No. 456).

Marks does not take issue with Judge Connelly's *in camera* review of the actual documents, only with Judge Connelly's decision to allow Maxtena's to submit *in camera* its accompanying two-page explanation of the documents and how the common interest doctrine applied to them.  Furthermore, Marks was not allowed the opportunity to respond even in a general manner,

thereby making Judge Connelly's ruling on the basis of an *ex parte* hearing. The actual documents would not have provided the basis for determining whether a common interest exists; the two-page submission provided the necessary context. But Marks was never allowed to see that, let alone respond to it.

Marks's objections will be overruled. As an initial matter, Maxtena's counsel's memory of the telephone conference is different, namely that Marks's counsel specifically asked about whether the two-page submission was to be submitted *in camera* and Judge Connelly said it could be. According to Maxtena, Marks's counsel agreed to this. But even if Marks's version of events is correct, he still agreed to sit idle while Judge Connelly reviewed the documents and accompanying submission, providing his view only if Judge Connelly asked for it. As such, it is difficult to see the practical difference for Marks between sitting silent and ignorant of the submission's contents and sitting silent while knowing what is in the submission. Additionally, while Marks is correct that "in our system of justice, *ex parte* judicial proceedings, . . . are greatly disfavored," *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 356 (4th Cir. 2007), there is a difference between an *ex parte* proceeding that decides the *merits* of a case, as was the case in *RZS Holdings*, and an issue involving discovery. *See United States v. Abu Ali*, 528 F.3d 210, 245 (4th

63

Cir. 2008) ("Evidentiary privileges may serve as valid bases to block the disclosure of certain types of evidence, and the validity of such privileges *may* be tested by *in camera* and *ex parte* proceedings before the court 'for the limited purpose of determining whether the asserted privilege is genuinely applicable.'" (emphasis added) (*quoting Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C.Cir. 1986). Judge Connelly's handling of this discovery dispute was within his discretion.

**H.   June 17, 2014 Order**

Finally, Marks objects to Judge Connelly's June 17, 2014 ruling concerning Maxtena's failure to supplement discovery responses. In April 2012, the court entered a consent order providing an initial period for the parties to pursue discovery limited to financial and valuation matters, with the hope that it would lead to a successful mediation. Discovery on the merits was deferred until after mediation, if unsuccessful. Marks served his First Request for Production of Documents and First Request for Interrogatories, seeking a variety of information related to Maxtena's financials and valuation. These requests counted against Marks's allotment for the entire case under the Federal and Local Rules. Mediation failed and the parties proceeded to merits discovery. Marks served discovery which required Maxtena to supplement and correct its responses from the valuation discovery. Maxtena objected to the

requests to supplement.   As a result, Marks moved to compel
Maxtena to supplement.   On June 17, 2014, Judge Connelly denied
Marks's motion.   He pointed to the purpose of the valuation
discovery - "an eye toward settling the case - and considering
that stated goal was not achieved, the undersigned will not
compel Maxtena to supplement its responses based on discovery
requests propounded to assist in facilitating settlement." (ECF
No. 457 ¶ 4).   Furthermore, "Maxtena has produced documents its
valuation expert relies upon during the merits discovery period
of this litigation.   Those are the documents *relevant* to the
litigation at this stage." (*Id.* ¶ 5 (emphasis in original)).
Marks objected to this ruling on July 7, 2014 (ECF No. 466), and
Maxtena responded (ECF No. 470).

Marks argues that the plain language of Rule 26(e) compels
Maxtena to update their discovery responses:

> A party who has made a disclosure under Rule
> 26(a) - or who has responded to an
> interrogatory, request for production, or
> request for admission - *must* supplement or
> correct its disclosure or response in a
> timely manner if the party learns that in
> some material respect the disclosure or
> response is incomplete or incorrect, and if
> the additional or corrective information has
> not otherwise been made known to the other
> parties during the discovery process or in
> writing.

Fed.R.Civ.P. 26(e)(1)(A) (emphasis added).   Furthermore:

> For an expert whose report must be disclosed
> under Rule 26(a)(2)(B), the party's duty to

> supplement extends both to information
> included in the report and to information
> given during the expert's deposition.  Any
> additions or changes to this information
> must be disclosed by the time the party's
> pretrial disclosures under Rule 26(a)(3) are
> due.

Fed.R.Civ.P. 26(e)(2).  Marks contends that it is incongruous to count the discovery taken in the valuation period against the total permitted to each party for the entire litigation, but then turn around and permit a party not to update those discovery responses.   Nothing in the court's December 2012 decision concerning the bifurcating of discovery limited Maxtena's obligation later to supplement responses during the merits phase.   Marks also points to the undersigned's statement in a June 19, 2013 telephonic motions hearing:

> Because my suggestion was going to be is
> that we not require either side to provide
> this kind of updated factual data until a
> time certain in advance of trial and when
> expert reports are going to be finalized,
> updated and provided and then back up from
> that date to when this data has to be
> released so that experts have a chance to
> digest it and update their reports.   We
> certainly are not going to wait until the
> trial, assuming one happens, to give any
> final disclosure of this valuation type
> information.

(ECF No. 190, at 30, Trans. 30:10-18).   Thus, the court recognized that Maxtena would have to supplement at some point.   According to Marks, that time has arrived.   Additionally, Rule 26(a) requires that an expert report contain the facts or data

66

*considered by* the expert in forming his opinion, not merely that which was relied upon.  Information that was considered but not relied upon is especially relevant for cross-examination.  Under Fed.R.Evid. 705, an expert can be required to disclose the facts or data on which he relied as part of cross-examination.  Thus, supplementation is crucial to Marks's ability to cross-examine Maxtena's expert at trial to test an expert's opinions, report, testimony, and qualifications.

The objections will be overruled.  Given the parties' operating principle that everything is deserving of litigation, any trial remains far off in the future.  The court understands that Maxtena's expert report is eligible for supplementation, but it is not clear error or contrary to law to deny the need to supplement reports presently when trial is not pending.

**V.   Conclusion**

For the foregoing reasons, Defendant's objections will be overruled.  Plaintiff's objections to the February 7, 2014 Order are sustained in part.  The motion to certify the November 7, 2013 order for immediate appeal will be denied.  A separate Order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
